JACKSONVILLE AMERICAN PUBLISHING COMPANY v. JACKSONVILLE PAPER COMPANY.

197 So. 672
Opinion Filed August 2, 1940

836

*J. A. Fitzsimmons,* for Petitioner;
*Ragland, Kurz & Layton,* for Appellee.

BUFORD, J.—Petition for certiorari has been presented here, seeking to have quashed the judgment of the circuit court, affirming the judgment of the civil court of record finding in plaintiff's favor.

The purpose of certiorari issued by the Supreme Court to the circuit court is to determine whether the judgment sought to be reviewed is illegal or is essentially irregular or prejudicial and materially harmful to the party complaining. American Railway Express Co. v. Weatherford, 86 Fla. 626, 98 So. 820. The subject matter of the suit is not here reinvestigated, tried and determined upon the merits generally as upon appeal or writ of error. Brinson v. Tharin, 99 Fla. 696, 127 So. 313.

Where a civil court of record directs a verdict, and a judgment on the directed verdict is affirmed by the circuit court, the Supreme Court may review the record on certiorari. Jones v. General Accident, etc., Assurance Corporation, 103 Fla. 787, 137 So. 889. Certiorari does not issue as a matter of right but rests in the sound discretion of the superior Court. First National Bank v. Gibbs, 78 Fla. 118, 82 So. 618; Gilbert v. State, 98 Fla. 599, 124 So. 1. Certiorari will not issue where it would be vain and useless and result in no change in the disposition of the cause. General Motors Acceptance Corporation v. Judge of Circuit Court, 102 Fla. 924, 136 So. 621.

The Jacksonville Paper Co. filed its declaration against the Jacksonville American Publishing Co., in the Civil Court of Record for Duval County, for a balance of $187.75 due on open account, together with interest from February 8, 1938. The declaration consisted of four common counts for: (1) Money payable by the defendant to the plaintiff for goods sold and delivered by the plaintiff to the defendant. (2) Money received by the defendant for the use of the plaintiff. (3) Money found to be due from the defendant

to the plaintiff on accounts stated between them. (4) Work done and materials furnished by the plaintiff to the defendant. Bill of particulars was attached to the declaration, which, after motion by defendant, was made more specific.

To the declaration defendant filed pleas of (1) never was indebted as alleged, and (2) that the alleged cause of action did not accrue within three years before this suit.

Plaintiff joined issue on the first plea, and filed replications to the second plea, which replications alleged in substance that: (1) Before the statute of limitations had run upon the cause of action, defendant promised to pay said indebtedness. (2) Before the statute of limitations had run upon the cause of action, defendant promised to pay said indebtedness in writing. (3) Within three years from the date of filing this suit, defendant promised to pay said indebtedness. (4) Within three years from date of filing this suit, defendant promised to pay said indebtedness in writing.

The court, upon demurrer, held these replications bad, and filed the following written opinion expressing his views for the ruling:

"The court is of the opinion that the 1st replication is defective because it does not allege that the new promise was within three years before the institution of this suit and that the 2nd replication is subject to the same objection because the declaration is upon the original indebtedness, not upon the written promise set up in the 2nd replication. If the allegations of the 3rd replication are added to the 1st and 2nd replications, the court will hold them to be good.

"The 3rd replication is bad because it does not allege a new promise in writing nor a new oral promise within three years after the cause of action accrued. The court is of the opinion that the 4th replication is a departure in pleading and that if the plaintiff wishes to rely upon a new

promise in writing made after the statute of limitations had run, the declaration must contain a count based upon the new promise in writing.

"The law as described by our Supreme Court appears to be:

"1st. That a new promise, though oral, tolls the statute of limitations, if made before the cause of action is barred. (Welles-Kahn Co. v. Klein, 81 Fla. 524), and that the plaintiff may declare upon the original indebtedness, and, if the statute of limitations is pleaded, reply the new promise (Vinson v. Palmer, 45 Fla. 630).

"2nd. That after the statute has run, there must be an acknowledgment or new promise in writing, and that this is the cause of action upon which the plaintiff must sue. (Section 4650 C. G. L., and Coker v. Phillips, 103 Sou. 612.)

"An order will be entered sustaining the demurrer and allowing the plaintiff ten days to file amended replications."

Thereafter plaintiff filed amended replications to which demurrer and motion to strike were addressed. At the hearing, after leave granted, plaintiff further amended the replications, which were allowed to stand. The further amended replications were: (1) That within three years of the accrual of the cause of action herein and within three years prior to the commencement of this suit, the defendant did promise to the plaintiff to pay said debt. (2) That within three years of the accrual of the cause of action herein and within three years prior to the commencement of this suit, the defendant did promise to the plaintiff in writing to pay said debt.

Defendant filed two rejoinders to the further amended replications, as follows:

"1. That the cause of action herein sued upon accrued

September 1, 1934, and this suit was commenced on October 25, 1938, more than three years from the date of the accrual of the cause of action declared upon herein, as appears from the declaration and the bill of particulars filed herein, and defendant for itself, or by its authority, did not promise, or pay, or authorize any agent to pay, or promise to pay, the plaintiff any sum, or sums, of money upon the alleged indebtedness within three years from the accrual of the alleged cause of action; and defendant avers that any payment made or oral promise given, either by the defendant or its authorized agent, within three years from the accrual of the alleged cause of action was insufficient to interrupt the operation of the statute of limitations upon the alleged indebtedness and thereby avoid defendant's plea of said statute of limitations.

"2. That the cause of action herein sued upon accrued September 1, 1934, and this suit was commenced on October 25, 1938, more than three years from the date of accrual of the cause of action declared upon herein, as appears from the declaration and bill of particulars filed herein, and defendant for itself, or by its authority, did not pay, or promise in writing to pay, or authorize any agent on its behalf to pay or promise in writing to pay the plaintiff any sum or sums of money upon the alleged indebtedness, within three years from the accrual of the alleged cause of action, and defendant avers that any payment made, or written promise given by any agent was unauthorized by it and avers that any written promise, if given by it of any agent on its behalf, said promise was conditional and not such a written promise which would acknowledge the debt and toll the operation of the statute of limitations pleaded by defendant, and further avers that any written promise, given by defendant and relied upon by plaintiff, would constitute a different cause of action than declared upon herein by plaintiff."

Trial was had, after which plaintiff moved for a directed verdict in its behalf. Defendant then moved for a directed verdict in its behalf on the ground that it affirmatively appears from the evidence that witness John Othen had no authority from the Board of Directors of defendant corporation to extend the period of corporate liability or to pay a debt barred by the statute of limitations, and that the burden was on plaintiff to prove such authority existed and was exercised.

The court ruled that this burden was on plaintiff, but that the only way in which a corporation could act was through its agents, and that the court was of the opinion that plaintiff had proved a *prima facie* case under the general issue.

Directed verdict for the full amount of $187.75, together with interest at 8 per cent from February 8, 1938, was returned by the jury, upon which final judgment was entered.

Motion in arrest of judgment and motion for new trial were denied, and writ of error was taken to the circuit court.

Thereafter the circuit judge entered an order affirming the judgment, without any written opinion.

It is contended that since plaintiff's declaration consisted entirely of the common counts, which were based upon an implied contract, and that since the further amended replications of plaintiff alleged a promise of the defendant to pay the debt, which was an express contract, this constituted a departure in pleading.

In answering this contention we refer first to the case of Whittington v. Stanton, 63 Fla. 311, 58 So. 489, where we held:

"Under a declaration upon an account stated, the cause of action is the agreement of the parties to pay the amount found to be due upon the accounting, and this may consist

of various items, and may include some due upon a written instrument as well as upon oral agreement, and the evidence to support the account may be wholly in writing or wholly by parol, or in part by writing and in part by parol."

Next we refer to the case of Hazen v. Cobb, 96 Fla. 151, 117 So. 853, where we said:

"It is a well settled rule that, when an express simple contract is open and unexecuted, and plaintiff proceeds for a breach of it, he must declare specially. *General assumpsit* will not lie. The law will not imply a contract where a valid express one exists. This rule is supported by the great weight of authority. (Citing authorities.)

"But where an express contract has been fully performed on plaintiff's part, and nothing remains to be done under it but the payment of money by defendant, which is nothing more than the law would imply against him, plaintiff may declare specially upon the original contract, or generally on the common counts, at his election; and, if he adopts the latter course, he may offer the contract in evidence to show that he has performed what was agreed to be done and to show the value of the services performed or the materials furnished. (Citing authorities.)"

Thus in a case where a contract has been fully performed by plaintiff and the only thing remaining to be done is the payment of money by defendant, plaintiff has the option of employing either the common counts or suing on the contract. See Cowan v. Orange Belt Securities Co., 142 Fla. 194, 194 So. 489. If plaintiff employs the common counts, can the defendant from that fact alone assume that plaintiff is suing on an implied contract? Should not defendant also assume that plaintiff perhaps may be suing on a contract executed as to all things except payment of money by defendant? We have so held. As one defense to the cause

alleged by the common counts, defendant pleaded the statute of limitations. To avoid this plea plaintiff set up in its further amended replications that before the statute of limitations had run and within three years of the filing of the declaration, defendant promised to pay the debt. Even assuming for the purpose of argument that replications like these alleging a new promise could only support a declaration predicated on an express contract, which of course is not true, there would be no inconsistency between such replications and such declaration, because a contract performed as to all things except the payment of money may be declared on in the common counts. And this declaration might be so taken.

Plaintiff by alleging the new promise to pay in the further amended replications did not depart from reliance on the original cause of action as stated in the declaration, but sought thereby to avoid the efficacy of the plea of the statute of limitations, by showing that defendant at a time before the statute of limitations had run and within three years of the filing of the declaration, promised to pay the amount due, thus lengthening the statutory life of the cause of action declared upon in the common counts.

The promise to pay if made before the period of limitations had run need not be in writing nor signed by the party to be charged. A verbal promise to pay before the expiration of the statute of limitations renews the account and any new period of limitations must be calculated from that date. See Welles-Kahn Co. v. Klein, 81 Fla. 524, 88 So. 315. The further amended replications alleged that the promise to pay was made by defendant prior to expiration of the statute of limitations, and so the original obligation was renewed.

From an examination of the record showing the loose-leaf ledger account of defendant corporation with plaintiff, it

affirmatively appears that at no period either between the filing of the declaration and the last preceding entry of the loose-leaf ledger, or between any of the entries thereon, had the statutory period of limitations run.

It appears that between 1934 and 1938 a series of letters were sent by the defendant corporation addressed to plaintiff and signed by John Othen, president, or initialed J. O., some making promises to pay, others acknowledging the account. Also defendant sent plaintiff several checks during that period, some signed by R. C. Hilton, assistant treasurer for defendant, and some signed by John Othen, as agent, together with Mrs. Foster.

Sec. 4650 (2930) C. G. L., 1927, providing that an acknowledgment or promise to pay a debt barred by the statute of limitations must be in writing and signed by the party to be charged, has no application where the new promise to pay was made before the statute of limitations had run. Welles-Kahn Co. v. Klein, 81 Fla. 524, 88 So. 315. See also Dickson v. Humpfer, 111 Fla. 481, 149 So. 574. A promise to pay or a part payment tolls the running of the statute of limitations, if made prior to the running of the statute. This rule is not derived from any statutory provision but from the decisions of the courts. 17 R. C. L., pp. 921, 889, Secs. 283, 248.

"The principle upon which part payment of a debt will take a case out of the statute is that such payment amounts to a voluntary acknowledgment of the existence of the debt from which the law implies a new promise to pay the balance. And in this connection it is said that no distinction can be made on principle between a written acknowledgment and part payment. In the case the written acknowledgment, express recognition of the existing indebtedness and an intention to revoke it is shown; while, in the case of part payment, the recognition and intent to revive is an inference

the law raises from part payment." 17 R. C. L. 923, Sec. 285.

The next consideration is whether John Othen, as an officer or agent of the defendant corporation, could, by the letters written, the partial payments made and other conduct, bind the defendant corporation so as to toll the running of the statute of limitations.

A corporation cannot be compared in all matters to a principal acting through his agent or a partner acting through his co-partner, because a corporation is a fictional being, a creation of the law, with neither will, purpose nor animation. It can act only through its agents. This principle is recognized in Section 6004 C. G. L., providing that the business of a corporation shall be conducted and managed by a president, a board of directors, a treasurer or cashier and such other officers and agents as the corporation may authorize. Plaintiff in error cites authorities holding that an agent did not have authority generally by a promise to pay or part payment to take the debt of his principal out of the operation of the statute of limitations. An officer or agent of a corporation having actual or ostensible authority is in a different status.

John Othen as president of defendant corporation sent to plaintiff during the years 1934, 1935, 1936 and 1937 numbers of letters, some of which contained promises to pay the balance due on defendant's account. Some of the letters were signed by John Othen as president, others were initialed "J. O." During this period several checks were sent to plaintiff to be applied as part payment of the account. Those signed by John Othen were signed by him as agent, together with Mrs. Foster. These facts together with the general conduct of John Othen in and about the business of defendant corporation are indicia of authority, either actual or ostensible, to act for the corporation generally in trans-

acting its business, and are indicia of the fact that he was held out or regarded by the corporation as a general manager or managing agent for the corporation.

In 3 Fletcher's Cyclopedia of Corporations 3187, Section 2012, we find the following relating to the authority of presidents of corporations:

"In view of the fact that presidents of corporations are often given general supervision and control over their management, it has been held by some courts that contracts or acts made or done by the president of a corporation in the course of its ordinary business will be presumed to have been within his authority, unless the contrary appears, or else it is expressly stated that the president has such powers. The rule so often stated that the president has very little or no authority merely by virtue of his office, that he has no powers other than those delegated him by the board of directors or otherwise expressly conferred upon him, that he has no more authority than any other director, etc., as already set forth above, is gradually being supplanted by the more reasonable view that he has certain more or less limited power, merely by virtue of his office, or at least that there is a presumption that such authority exists, in case of the ordinary routine business of the corporation. The courts which have, at least to some extent, broken away from the rule making the president a mere dummy, will be found to state their conclusions to the contrary in somewhat different language, and the rule enunciated by some of them is broader than the rule laid down by other courts. In some jurisdictions the rule is stated as a presumption of authority, while in other jurisdictions it seems that certain powers inhere in the office without regard to the actual or apparent authority conferred, where not otherwise limited. It is therefore deemed advisable to take up, one by one, and state

the views of the courts in those jurisdictions rejecting the old rule wholly or in part. In stating this so-called modern doctrine it is oftentimes difficult to ascertain just what rule the courts, in particular decisions, intend to lay down, because of their hair-line dividing his powers as a general manager and his powers merely as president. If he is expressly declared by the by-laws or by a resolution of the directors, to be a general manager, then of course his powers are to be measured by those of a general manager rather than by those of a president. So, if the directors are mere dummies and leave the management entirely to the president, then he is in effect a general manager and his powers are those of a general manager rather than those of a president. So if he had been permitted in the past to exercise certain powers, then his authority is to be determined by the rules relating to apparent powers."

Further in Volume 3 of Fletcher's Cyclopedia of Corporations 3192, Sec. 2016, we find the following relating to the Florida rule:

"In Florida, it is held that the president may be 'presumed' to have authority to employ agents to negotiate the sale of property owned by the company. Furthermore, the tendency of the decisions in this State is decidedly in favor of the rule that a presumption of authority exists in the case of acts of the president in the ordinary course of business."

In referring to the president of a corporation, we said in the case of Cotton States Belting & Supply Co. v. Florida R. Co., 69 Fla. 52, 67 So. 568:

"The details of the corporate business are usually carried on and attended to by him and his representatives; the usual or ordinary administrative and fiscal affairs of the corporations are transacted through him. The scope of his agency is wide in all matters arising in the ordinary course of the

corporation's business. In this position of trust and confidence the corporation places him, and invites the public to transact business with it through him."

A president of a corporation may be expressly authorized, or have authority by virtue of being intrusted generally with the management of the business to pay claims. New Orleans Building Co. v. Lawson, 11 La. 34; Africa v. Duluth News Tribune Co., 82 Minn. 283, 84 N. W. 1019, 83 A. S. R. 424; Quee Drug Co. v. Plaut, 55 App. Div. 87, 67 N. Y. S. 10. It was held in Kelly Asphalt Block Co. v. Brooklyn Alcatraz Asphalt Co., 190 App. Div. 750, 180 N. Y. S. 805, that power conferred on a president of a corporation to pay the bills of the company with certain funds authorizes him to pay a debt barred by the statute of limitations, and held by another corporation in which said president was the sole stockholder, where such ownership was known to all interested parties.

The following pertinent authority is found in 13 Am. Jur. 896, Sec. 930:

"The officers or agents of a corporation have only such power to release, settle, or compromise claims owing to the corporation as is conferred upon them expressly or impliedly, and this rule has been applied to the offices of president and secretary of corporations. An officer of a corporation cannot adjust his claim against the corporation by using its paper to pay his own debts. The authority, however, to release or compromise corporate claims may be inferred from the manner in which the officer or agent has been permitted to conduct the business of the corporation. Upon similar principle, a corporation may be bound by its duly authorized agent acting within the real or apparent scope of his authority, and the agent may waive forfeitures and estop the corporation, so as to prevent it from setting up a defense

.which would operate as a fraud on the other contracting parties.

"An officer of a corporation may, in some cases, under a proper authorization waive the right to plead the statute of limitations. A payment of interest made by a corporate officer within the authority with which he has apparently been clothed by the corporation operates to toll the operation of the statute of limitations on a corporation obligation."

In the case of Chestnut Street Trust & Savings Fund Co. v. Record Publishing Co., 227 Pa. 235, 75 Atl. 1067, 136 A. S. R. 874, the Pennsylvania Supreme Court in discussing a question similar to that presented here, said:

"* * * If the referee were right in holding that Singerly had authority to execute the note, it would follow that he had authority to make the payments of interest. This brings us to a consideration of the question of the authority of Singerly to give the note in the first instance. The by-laws being silent as to the officer authorized to give such notes, it becomes a question of fact to be decided from the evidence. Where the stockholders and directors turn over to an officer the full and absolute management of all corporation affairs, and permit him to exercise unrestrained control for a long course of time without instructions from or reference to any other authority, *prima facie* the officer so intrusted may be taken to have power to do any act which the directors could authorize or ratify. In the recent case of First National Bank v. Colonial Hotel Company (not yet officially reported), 75 Atl. 412, it was held that a general and universal course of dealing by a corporation through a particular officer will give rise to an implied power to act and bind the corporation, and that such implied power will protect one so dealing with the corporation for the first time, even though such person had no previous knowledge of the manner in which the corporation was being conducted."

The question of apparent power and the estoppel of the corporation to deny it is discussed in 3 Fletcher's Cyclopedia of Corporations 3100, Sec. 1916, as follows:

"A corporation is subject to the same extent as a natural person to the general principle that one who holds out another, or allows him to appear as having authority to act, as his agent with respect to his business generally, or with respect to a particular matter, cannot, as against persons dealing with him in good faith, deny that his apparent authority is real. If a corporation, therefore, or its directors, either intentionally or negligently, clothe a particular officer or agent with an apparent authority to act for it in a particular business or transaction, and persons deal with him in good faith, it will be bound to the same extent precisely as if such apparent authority were read. The rule has been well stated as follows: 'A very large part of the business of the county is carried on by corporations. It certainly is not the practice of persons dealing with officers or agents who assume to act for such entities to insist on being shown the resolution of the board of directors authorizing the particular officer or agent to . transact the particular business which he assumes to conduct. A person who knows that the officer or agent of the corporation habitually transacts certain kinds of business for such corporation under circumstances which necessarily show knowledge on the part of those charged with the conduct of the corporate business assumes, as he has the right to assume, that such agent or officer is acting within the scope of his authority.' The rule applied is that 'the authority of an agent to do certain acts in behalf of his principal may be inferred from the continuance of the acts themselves over such a period of time and the doing of them in such a manner that the principal would naturally have become cognizant of them and would have forbidden them if unauthorized. The reason for this

rule is further stated as follows: 'If each and every individual having business with such a corporation must at his peril ascertain and determine the exact scope and limitation of the agent's authority, it is manifest that he could not safely deal with the acknowledged agent, and that the business of the corporation itself would be materially impaired. The public is compelled to rely upon the apparent authority of the conceded agents of such corporations, especially when, as managers or superintendents, they are placed in control of departmental affairs.' If an officer, for years prior to a certain act or contract, 'was held out by the corporation as its general agent, and as having authority to do such acts as the one in question, it is bound thereby to the same extent as if authority were conferred in the most formal manner.' Apparent authority is sufficient without any formal resolution conferring such authority. If the question involved is one of apparent power, then the actual power is immaterial, so far as limiting the liability of the corporation is concerned. Of course, the apparent authority must have existed before the act in controversy. If contracts beyond the express authority are also not within the apparent authority, the corporation is not liable where it had no knowledge thereof and received no benefits therefrom."

Under these quoted authorities it is seen that if the corporation had authority to purchase and pay for the goods in the first instance, and evidently it did as nothing to the contrary appears in the record, it had authority to pay for them at any time before the statute of limitations had run just the same as if it had paid for them the day they were purchased. The corporation likewise could make payment or make a promise to pay through its officer or agent actually designated as the active managing head of the corporation or one whom the corporation permitted to exercise the functions of the managing head of the corporation, at any time before

the statute of limitations had run on the account, and such payment or promise could be considered, in the absence of a showing of an intent to the contrary, as a payment or promise to pay on behalf of the corporation such as would toll the running of the statute of limitations.

The question of whether or not the court should have directed the verdict in favor of plaintiff remains to be disposed of. John Othen gave the only evidence tending to show that he did not have authority to bind the corporation. He testified that the corporation through its board of directors did not authorize him to write the letters, and that he had no authority to compromise or settle claims. This evidence is insufficient unless there was also evidence on the question as to whether the corporation had held him (John Othen) out to the public generally as being the person in charge of the corporation's affairs in the ordinary course of business, which would include the payment or the promise to pay an account on which the statute of limitations had not run. The *actual authority* to pay or to promise to pay this account or the *absence of ratification* of the acts of John Othen, is immaterial if, as appears here, he (John Othen) had been permitted by the corporation to act as managing head of the ordinary and usual business affairs of the corporation. The fact that the corporation had placed him in such position raises an estoppel against the corporation to deny the existence of authority exercised by him.

Upon consideration of the entire record and proceedings below we do not think any principle of law or any substantial rights of plaintiff in error have been violated by the judgment of the circuit court, so as to warrant us in granting the petition for writ of certiorari.

The petition is therefore denied.

It is so ordered.

WHITFIELD and CHAPMAN, J. J., concur.

TERRELL, C. J., and THOMAS, J., agree to conclusion.

Justice BROWN not participating as authorized by Section 4687, Compiled General Laws of 1927 and Rule 21-A of the Rules of this Court.