**Bruce A. NANTS, d/b/a Law Offices of Bruce A. Nants, Plaintiff,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Southeast Bank, N.A., an insolvent bank, Defendant.**

No. 93–0247–CIV.

United States District Court, S.D. Florida.

Aug. 12, 1994.

Bruce A. Nants, pro se.

Carlos F. Concepcion, Concepcion, Sexton & Stiphany, Coral Gables, FL, for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

HIGHSMITH, District Judge.

THIS CAUSE came before the Court for non-jury trial on July 28, 1994. Having received documentary and testimonial evidence, having heard arguments of counsel, and being otherwise fully advised in the premises, the Court makes its findings of fact and publishes its conclusions of law.

### FACTUAL FINDINGS

1. On October 1, 1983, Southeast Bank, N.A. entered into a written contract with Plaintiff Bruce A. Nants, Esq., whereby Nants undertook to perform collection services for the bank. John Raulerson, Litigation Supervisor, signed the contract on behalf of Southeast Bank.

2. The contract provided that Nants would be reimbursed for all court costs incurred in filing lawsuits to recover payment on the accounts referred to him by Southeast Bank's Recovery Department.

3. The contract also provided that Nants would be paid a fee of 35% of the final judgment or stipulation for settlement obtained in each of the accounts sent to him by the bank. Payment to Nants on each such account would become due when the account was paid in full with regard to settlement; at the time payment was made by the debtor; or when the account was closed by the bank or referred to a secondary collection agent. The bank undertook to promptly notify Nants of the occurrence of any one of these events.

4. The bank reserved the right to close any lawsuit or account placed with Nants. In such instances, including cases where the debtor could not be located and served with process, Nants would be paid an agreed upon sum of $250.00 to cover his fees.

5. Upon cancellation of the contract, Nants would be entitled to place a lien on all accounts for the 35% collection fee, or the $250 agreed to minimum fee.

6. From 1983 to 1986, Nants' collection work for Southeast Bank went smoothly. Nants was receiving between fifty and seventy-five files per month, and he had no complaints regarding payment for his work.

7. In the fall of 1986, however, the referral volume dropped to approximately ten files per month. Contemporaneously, the bank underwent a restructuring of its collections office; and John Raulerson, the litigation supervisor who was Nants' liaison with the bank, was replaced by Recovery Manager Harriet Margolies.

8. On March 17, 1987, Nants wrote to Margolies, confirming a telephone conversation in which they had agreed upon terms of payment for Nants' legal services, as well as the process whereby Nants would terminate his representation of Southeast Bank. Nants requested that Margolies indicate her acceptance of these terms by signing the letter under the caption:

Agreed to and accepted by
SOUTHEAST BANK, N.A. this __
day of March, 1987.

_____

HARRIET MARGOLIES
Recovery Manager
Southeast Bank, N.A.

Nants also requested that Margolies send him a copy of the signed letter. At trial, Nants proffered a copy of the letter. (Exhibit # 6). The letter bears a stylized, distinctive signature resembling an "H" and the entry "24" on the blank preceding the word "day."

9. The FDIC objected to the contents of the letter on the basis of hearsay, and disputed the authenticity of the signature. The authenticity of the letter itself was not contested. The Court overruled the hearsay objection. As to the authenticity of the signature, the FDIC presented the testimony of Harriet Margolies, who denied that the signature appearing on the letter was hers. Margolies acknowledged that a very similar stylized signature appearing on another document admitted into evidence was hers. Margolies claimed, however, that she could detect characteristics in the signature appearing on the March 17, 1987, letter which were different from her own. During cross-examination, Margolies conceded that her subordinates had authority to sign on her behalf in matters falling within certain parameters. In light of Margolies' testimony, the Court found that Nants had every reason to rely upon the validity of the signature appearing on the copy of the letter returned to him. Therefore, the Court admitted the letter into evidence.

10. The March 17, 1987, letter incorporated in full effect the terms of the October 1, 1983, contract, including the payment terms for all of the open accounts in Nants' possession as of that date. Pursuant to these terms, Nants was entitled to 35% of the final judgment or stipulation for settlement, or a $250 basic fee, depending on the disposition of the file. The letter also established a telephone notification procedure, whereby Southeast Bank personnel would inform Nants, on an ongoing basis, which files had been paid, thereby entitling him to a 35% fee,

and which files had been closed, for which Nants would receive the $250 minimum fee. Nants undertook to input this telephonic information into his office computer and submit a computerized print-out of all paid files and closed files. The bank agreed to pay Nants from this computer print-out.

11. Pursuant to its acceptance of the letter, Southeast Bank acknowledged that it owed Nants the sum of $46,825.00 for unpaid court costs and legal fees to date.

12. In the letter, Nants anticipated that the bank would add to this outstanding amount the monies collected for 1987 and pay that balance in January 1988, with the same procedure being followed in subsequent years. The bank, however, did not immediately pay to Nants the agreed amount of $46,825.00, nor did it make any subsequent payments.

13. Over the two and a half years following Nants' receipt of the signed copy of the March 17, 1987, letter, Nants received periodic telephone calls from Southeast Bank personnel informing him of paid accounts and closed accounts. At no time did the bank provide to Nants information as to when an account had been paid or what the payment amount had been.

14. Upon receipt of the bank's notification regarding the disposition of an open account, Nants pulled the appropriate file from his records, and entered the information into his computer ledger. For each closed file, Nants accrued in his computer ledger $250. For each paid file, Nants accrued 35% of the final judgment or the stipulation for settlement amount, which was reflected in his records.

15. Having received no payment from Southeast Bank, Nants rendered an account to the bank on January 20, 1988. The statement reads:

> Billing for attorney fee commissions and unpaid court costs/per agreement dated March 27, 1987
>
> Attorney fees due and owing . . . . . . . . . . . . . $90,731.67
>
> Billing is for years of 1986 and 1987. Billing also includes all unpaid court costs and file closing fees. Payment due upon receipt. Be sure and send pink copy with payment. Thanks!

16. On January 17, 1989, Nants rendered a second account to Southeast Bank. The statement reads:

> Attorney Fee Commissions up to January 1, 1989
>
> Amount due for paid files and closed. . . . . $138,521.78 accounts
>
> Please return pink copy with payment. Billing is for period of 1986–1988.

17. On January 4, 1990, Nants rendered a third account to Southeast Bank. The statement reads:

RE: Unpaid court costs and legal fees

Amount due for files closes (sic) and..... $165,342.15
paid per attached computer print-out

Payment due upon receipt of statement. Please
return pink copy with payment. Thank you

NOTE: Payment of fees and costs still outstanding.
Payment has not been forthcoming for several years.
Suit will be filed if necessary in order to enforce payment.
Please remit within thirty days.

---

18. Each of these three statements represents the cumulative fees and costs to date calculated by Nants, pursuant to the telephone reporting system agreed to by Nants and the bank in the March 17, 1987, letter. Thus, the amount billed in the final January 9, 1990, statement, $165,342.15, represents the cumulative amount due as of that date.

19. On August 20, 1991, Nants wrote to David Shropshire, Litigation Supervisor for Southeast Bank, formally advising him of his intention to file suit within thirty days to recover the outstanding balance for his legal services.

20. On September 19, 1991, the Comptroller of the Currency declared insolvent and closed Southeast Bank, and Defendant Federal Deposit Insurance Corporation ("FDIC") took over as receiver for the bank.

21. In a letter dated September 20, 1991, the FDIC advised Nants that a proof of claim for unpaid fees and expenses owed by Southeast Bank must be submitted for consideration by the FDIC.

22. Pursuant to the FDIC's letter, Nants filed a proof of claim on October 9, 1991, in the amount of $170,796.24; and an amended proof of claim on January 17, 1992, for $174,657.80.

23. On June 5, 1992, the FDIC sent Nants a notice of incomplete claim. Pursuant to the notice, Nants resubmitted his claim on June 30, 1992, in the amount of $190,983.23, which the FDIC received on July 8, 1992. Nants attached to the completed proof of claim a computer print-out, listing the following information for each unpaid account: name; account type and number; disposition, such as final judgment or stipula-

tion; date of such disposition; collection balance on the account; fee, computed as 35% of balance for final judgments and stipulations, or the minimum $250 fee for others; and costs incurred.

24. There are no entries in the print-out reflecting the date when Nants·was informed by the bank that a file had been paid or closed. Nor does the print-out reflect how much Southeast Bank had collected for each paid file. The bank did not furnish the latter information to Nants through the telephone reporting system established pursuant to the March 17, 1987, letter.

25. On January 12, 1993, the FDIC disallowed Nants' claim. The FDIC gave the following three reasons for the denial: ₒthe information submitted did not satisfactorily prove Nants' claim; Southeast Bank's records did not reflect outstanding invoices from Nants as of the bank closing date; amounts that had been outstanding for over five years as of the bank closing date were not recoverable under Florida law.

26. The disallowance notice informed Nants of his right to file suit, within sixty days, in the United States District Court for the Southern District of Florida, where Southeast Bank was located.

27. Nants filed this action on February 9, 1993.

### CONCLUSIONS OF LAW

In its conclusions of law, the Court addresses the issues presented at trial, as well as those raised by the parties in their respec-

tive post-trial memoranda, filed pursuant to the Court's instructions.

### 1. Jurisdiction

Nants exhausted his administrative remedies by filing a proof of claim with the FDIC. Moreover, Nants commenced this action within sixty days of the date of the FDIC's disallowance of his claim. Therefore, the Court has jurisdiction over this action, pursuant to the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA").

### 2. Nature of judicial proceeding

The judicial proceeding contemplated by FIRREA consists of a *de novo* determination of Nants' claim for unpaid fees and costs, arising from his contract with Southeast Bank; not a review of the FDIC's disallowance of the claim. *Bank of New England, N.A. v. Callahan,* 758 F.Supp. 61, 63 (D.N.H.1991). Both the statutory language of FIRREA and its legislative history support this view. The Act provides that no court may review the FDIC's determination to disallow a claim. 12 U.S.C. § 1821(d)(5)(E). Moreover, section 1821(d)(6), entitled, "Provision for agency review or judicial determination of claims," prescribes a sixty day period for a claimant whose claim has been disallowed by the FDIC to "file suit on such claim." 12 U.S.C. § 1821(d)(6)(A)(ii). "This construct of administrative resolution and de novo judicial determination is responsive to the constitutional and statutory concerns with [the prior statutory scheme's] claims adjudication process as outlined by the Supreme Court in *Coit Independence Joint Venture v. FSLIC,* 489 U.S. 561, 109 S.Ct. 1361, 103 L.Ed.2d 602 (1989)." H.R.Rep. No. 101–54(I), 101st Cong., 1st Sess. (1989), *reprinted in,* 1989 U.S.C.C.A.N. 86, 214. In *Coit,* the United States Supreme Court construed an earlier statute, which prescribed the powers of the

Federal Savings & Loan Insurance Corporation, as permitting *de novo* consideration of state law claims by an Article III court, in order to avoid a finding of constitutional infirmity in that statute. *Coit,* 489 U.S. 561, 577–79, 109 S.Ct. 1361, 1371 (1989).[1]

The term "de novo" means "a fresh, independent determination of 'the matter' at stake; the court's inquiry is not limited to or constricted by the administrative record, nor is any deference due the agency's conclusion." *Doe v. United States,* 821 F.2d 694, 697–98 (D.C.Cir.1987). In making this fresh and independent determination, therefore, the Court may consider all of the evidence presented at trial, regardless of its presentation to the FDIC during the claims review process.

In its post-trial memorandum, the FDIC acknowledges that the Court must apply a *de novo* standard to these proceedings. Nevertheless, the FDIC argues that Nants was precluded from offering at trial, and the Court is precluded from considering, the March 17, 1987, letter admitted into evidence as Exhibit # 6, because Nants had not submitted the letter to the FDIC with his proof of claim. The FDIC's argument ignores the meaning of *de novo* consideration, and contravenes the statutory language and the legislative history of FIRREA. Were the Court to adopt the posture suggested by the FDIC, the Court would be limiting itself to the record before the FDIC, thereby depriving Nants of his right to have an Article III court "adjudicate" his claim. *See Coit,* 489 U.S. at 577–79, 109 S.Ct. at 1371 (Contract disputes "involve private rights which are at the core of matters normally reserved to Article III courts.") (citations omitted).

In support of its position, the FDIC relies on *Brown Leasing Co. v. F.D.I.C.,* 833 F.Supp. 672 (N.D.Ill.1993), and *Coleman v. F.D.I.C.,* 826 F.Supp. 31 (D.Mass.1993). In both *Brown* and *Coleman,* the plaintiffs at-

---

**1.** Other courts have not been as precise as the District of New Hampshire was in *Callahan,* when referring to the statutory provision for *de novo* judicial consideration of disallowed claims. *See e.g., Circle Indus. v. City Federal Savs. Bank,* 749 F.Supp. 447, 455 (E.D.N.Y.1990) (District court conducts *de novo* review of administrative

decision.). The FDIC's disallowance notice of January 12, 1993, informing Nants of his right to file suit, suffers from similar inexactness by stating that Nants' "sole available procedure for review of this determination is by bringing an action in the United States District Court for the Southern District of Florida."

tempted to amend the complaints that had been filed in pre-receivership lawsuits, when the respective actions were continued upon completion of the claims review process. *Brown,* 833 F.Supp. at 674; *Coleman,* 826 F.Supp. at 32. In both instances, the plaintiffs attached their original complaints to the proofs of claim filed with the FDIC. The *Brown* court, relying in part on a similar holding from the *Coleman* court, denied leave to amend, finding that it lacked subject matter jurisdiction over legal claims that had not been previously submitted to the FDIC administrative claims process.

The *Brown* and *Coleman* cases are inapposite to this case. The jurisdictional bar found in those cases arose from the introduction of new legal claims, which had not been reflected in the complaints submitted to the FDIC with the proofs of claim. Unlike the *Brown* and *Coleman* plaintiffs, Nants did not prosecute a pre-receivership action. His threatened lawsuit against Southeast Bank was thwarted by the bank's failure. Only after completing the administrative claims process, did Nants initiate legal action. Thus, the jurisdictional basis for the *Brown* and *Coleman* holdings is absent in this case.

Despite this distinction, the FDIC relies on *Brown* and *Coleman* by characterizing the March 17, 1987, letter introduced at trial as a new claim which was never presented to the FDIC, and which, the FDIC argues, the Court may not consider in this proceeding. The FDIC does not explain how this letter metamorphosed from evidentiary document to claim, nor what is the nature of the new claim. In any event, the Court declines to follow the reasoning of the *Brown* and *Coleman* courts. According to the *Brown* court, requiring the presentation of all legal claims to the FDIC for review, prior to the initiation or continuation of a lawsuit against a failed institution, prevents the imposition of "a burden on the FDIC to research the entire corpus of both Federal and State law for any legal theory supported by each set of facts

presented" in an administrative claim. *Brown,* 833 F.Supp. at 675–76. It appears to the undersigned that the *Brown* court is attributing to the FDIC the very adjudicatory function which the Supreme Court in *Coit* declined to read into FIRREA's predecessor statute, and which Congress took pains to omit from FIRREA. *See* H.R.Rep. No. 101–54(I), 101st Cong., 1st Sess. (1989), *reprinted in,* 1989 U.S.C.C.A.N. 86, 214–15 ("[T]he [*Coit*] Court noted that 'serious constitutional difficulties would be presented by the FSLIC's claims process even if it were authorized by statute, because granting even administrative judges the exclusive authority, with only limited judicial review, to adjudicated certain categories of State law claims under these circumstances may invade the domain reserved for Article III courts provided by the U.S. Constitution.").

### 3. The merits of Nants' claim

■ Having established the *de novo* nature of this proceeding, the Court addresses the merits of Nants' claim for unpaid attorney's fees and court costs, arising from services rendered to Southeast Bank pursuant to the October 1, 1983, contract. First, the Court considers Nants' argument that he is entitled to recover the full $190,983.23 claimed in the administrative process. The only evidence proffered by Nants in support of this claimed amount is the computer print-out, prepared by him in support of his proof of claim, identifying the outstanding accounts and the amounts due for each. The Court finds this document insufficiently reliable to establish, by a preponderance of the evidence, Nants' entitlement to payment of $190,983.23, under breach of contract.[2]

■ Moreover, the Court finds no merit in Nants' post-trial argument that his proffering of the computer print-out into evidence shifts the burden of proof to the FDIC to rebut this evidence, and that the FDIC's failure to proffer rebuttal evidence entitles

---

2. Nants also brought to trial several file boxes containing his office files for the accounts listed in the computer print-out. These files are identified by Nants as Exhibits # 39 through 267. Nants candidly admitted at trial, however, that he did not know which files support the fee amounts shown on computer print-out, although they do support the court costs incurred. In light of Nants' professed inability to effect a reconciliation between the computer print-out and his files, the Court declined to attempt such a time-consuming and hopeless task on its own.

him to recover the full amount derived from the print-out. Nants relies heavily on treatises and cases discussing presumptions of law and fact, and their operative effect. Throughout this discussion, however, Nants fails to identify, and the Court is not aware of, a rule of law by which a presumption attaches to his case. Thus, despite the FDIC's failure to proffer rebuttal evidence regarding the computer print-out, the Court finds that Nants did not prove his claim for the full amount of $190,983.23. The Court, therefore, addresses Nants' claim for $165,-342.15, predicated on account stated.

### a. Account stated—the pleadings

■ Preliminarily, the Court considers the FDIC's post-trial argument that Nants is precluded from recovering under the theory of account stated because he did not properly plead such a cause of action. A review of Nants' amended complaint reveals no mention of "account stated" as a cause of action. Indeed, Nants appears to have drafted his amended complaint as a request for judicial review of the FDIC's disallowance, rather than as a state law claim for unpaid attorney's fees and costs. Nants' approach is understandable in light of the arcane nature of FIRREA, as well as the language contained in the FDIC's disallowance notice, informing Nants of his right to seek judicial review of the FDIC's determination. Nevertheless, the Court notes that paragraphs 6 through 8 of the amended complaint state:

6. On October 1, 1983, SOUTHEAST BANK, N.A. (hereinafter referred to as BANK) entered into a contractual arrangement with NANTS in which NANTS agreed to provide legal services to the BANK on various legal accounts. A true and correct photocopy of the contract is attached hereto and made a part hereof and incorporated by reference and marked as EXHIBIT A.

7. In accordance with the terms of the aforesaid contract, NANTS provided legal services to the BANK.

8. The BANK paid its legal bills and invoices submitted to it by NANTS. However, in late 1986 the BANK began to pay sporadically and then in 1987 through 1989 the BANK stopped paying the legal bills and invoices submitted to it by NANTS.

The Court finds these allegations sufficient to provide the FDIC with notice of the essence of Nants' claim; namely, that he had billed Southeast Bank for his legal fees but had not been paid. *See Fed.R.Civ.P.* 8(a) ("A pleading which sets forth a claim for relief ... shall contain ... a short and plain statement of the claim showing that the pleader is entitled to relief."). Moreover, Nants' claim for account stated was fully addressed at trial. Therefore, the Court may consider the claim as if it had been raised in the pleadings. *See Fed.R.Civ.P.* 15(b) ("When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."). To the extent that the FDIC has objected to the viability of this claim in its post-trial memorandum, the Court finds that the FDIC was not prejudiced by the admission of evidence at trial in support of this claim, and deems the pleadings amended to conform to such evidence. *Fed.R.Civ.P.* 15(b). Hence, the Court rejects the FDIC's argument that Nants' failure to plead the elements of a claim for account stated, without more, precludes his recovery under this cause of action.

### b. Account stated—the elements of the claim

■ "An 'account stated' is defined as an agreement between persons who have had previous transactions, fixing the amount due in respect to such transactions and promising payment." 1 Fla.Jur.2d *Accounts and Accounting* § 5. "While, in ancient times, an account stated resulted when two merchants got together with their accounts and struck a balance, and the law inferred a promise, if not expressly made, that the balance would be paid, in modern times, an account stated generally arises from the rendition of a statement of transactions between the parties with a failure on the part of the party to whom the account was rendered to object within a reasonable time or an express acquiescence in the account rendered. But, without express approval, an account stated is

now hardly more than a tacit admission of correctness which puts the burden on the objecting party to show wherein it is wrong." *Id.*

A plaintiff may prove a prima facie case for account stated by proffering evidence that the account was rendered under circumstances which raise a presumption of assent. *Id.* at § 14. The practice of periodic billings for certain amounts in the regular course of business, where no objection to the amount of the bill is made within a reasonable time, may raise such a presumption. *F.D.I.C. v. Brodie*, 602 So.2d 1358, 1361 (Fla. 3d DCA 1992) (citing *Levy v. Stephen L. Geller, Inc.*, 444 So.2d 568, 568 (Fla. 3d DCA 1984)). *See also First Union Discount Brokerage Svcs., Inc. v. Milos*, 997 F.2d 835, 841 (11th Cir.1993). Although the plaintiff must show that, at the time of stating the account, there had been previous dealings and transactions with the defendant, it is not necessary to "show the books of original entries from which the account is made up since the very object in rendering, stating, and settling accounts is to avoid the necessity of making such proof." 1 Fla. Jur.2d *Accounts and Accounting* § 14. To overcome the prima facie case, the party attacking the account stated must offer "proof of fraud, duress, mistake or other grounds cognizable in equity for the avoidance of an instrument." *Merrill–Stevens Dry Dock Co. v. "Corniche Express"*, 400 So.2d 1286, 1287 (Fla. 3d DCA 1981).

### c. Account stated—the proof

At a minimum, Nants has proved that he is entitled to recover the sum of $46,825.00 under the theory of account stated. This is the amount reflected in the March 17, 1987, letter which the Court has found binds the bank through the apparent signature of Harriet Margolies. The letter, together with the October 1, 1983, contract which it ratifies, constitutes evidence of previous dealings between Nants and the bank. The letter is also evidence of an agreement between Nants and the bank, which fixes the amount due Nants in respect to such prior transactions at $46,825.00. Finally, the letter contains an express promise on the part of the bank to pay the this amount, plus additional sums to be accrued pursuant to the agreed telephone reporting system.[3]

The Court further finds that Nants is entitled to recover, under account stated, the sum of $165,342.15, reflected in the January 9, 1990 statement sent by Nants to the bank. The Court has already found that Nants and the bank had previous dealings, as evidenced in the March 17, 1987, letter and the October 1, 1983, contract. Various other documents proffered by Nants also reflect his ongoing dealings with the bank.[4] Although the bank did not expressly consent to pay the amount reflected in the January 9, 1990, statement, Nants raised a presumption of assent to pay this amount on the part of the bank by proffering evidence that he periodically billed the bank, in accordance with the procedure established in the March 17, 1987, letter. This evidence consists of the yearly statements Nants sent to the bank in January, 1988, January, 1989, and January, 1990. The first statement makes specific reference to the March 17, 1987, agreement and indicates that the billing represents outstanding amounts for the years 1986 and 1987. The second statement indicates that the billed amount corresponds to the years 1986 to 1988. The third and final statement states that payment has not been forthcoming for several years and threatens the filing of a lawsuit. The bank made no objection to the amount of this final bill within a reasonable time. Indeed, the FDIC proffered no evidence that the bank had ever objected to any of Nants' bills. The Court concludes, therefore, that Nants proved a prima facie case for account stated in the amount of $165,342.15.[5]

---

**3.** Alternatively, Nants may recover the $46,-825.00 under breach of contract, based on the bank's agreement that this amount was then due and payable to Nants for services rendered to date, and the bank's failure to effectuate such payment.

**4.** Exhibit # 11, for example, consists of a bill sent by Nants to the bank on October 30, 1985 and a check stub dated March 38, 1986 reflecting payment to Nants by the bank.

**5.** In its post-trial memorandum, the FDIC argues that the statements sent by Nants to the bank in 1988, 1989, and 1990 do not contain the neces-

To overcome the prima facie case proved by Nants, the FDIC had to offer proof of fraud, duress, or mistake. The FDIC did not offer any such proof. In its post-trial memorandum, the FDIC appears to rely on the defense of mistake by recounting Nants' candid testimony that he was unsure as to the actual amount of money collected by Southeast Bank. Pursuant to the terms of the October 1, 1983, contract, however, Nants' fee was to be computed as 35% of the final judgment or stipulated settlement amount for each paid account. The contract makes no mention of the actual collected amount. Indeed, the Court has found that the bank did not inform Nants how much it had collected on the accounts the bank personnel designated as paid under the telephone reporting system. In any event, the presumption of correctness which attaches in an account stated stems from the statements themselves, not from the underlying bookkeeping entries. Therefore, the Court concludes that the FDIC did not overcome the prima facie case. Hence, Nants is entitled to recover $165,342.15 under the theory of account stated.

### 4. The FDIC's defense of statute of limitations

According to the FDIC, Nants is barred from recovering the 35% contingency fee on the underlying judgments or stipulations for settlement obtained in 1984 and 1985 by Florida Statute § 95.11, which prescribes a five year statute of limitation for breach of contract actions. According to the FDIC, Nants' fee entitlement for these accounts accrued at the time the final judgments or stipulations were obtained. Therefore, the time for bringing an action against Southeast Bank on those accounts had expired by the time the FDIC took over as receiver for the bank in 1991.

The FDIC's argument is misguided for several reasons. First, the Court

notes that, pursuant to the October 1, 1983, contract, Nants' contingent fee for each account became due when the account was paid, not when the final judgment or stipulation was obtained. Therefore, Nants' causes of action for the 1984 and 1985 judgments and stipulations did not necessarily accrue in those same years. Moreover, in the March 17, 1987, letter, the bank reaffirmed its existing debt to Nants for unpaid fees and court costs, thereby tolling the statute of limitations. *Jacksonville American Pub. Co. v. Jacksonville Paper Co.*, 143 Fla. 835, 197 So. 672, 677 (1940) (A promise to pay tolls the running of the statute of limitations, if made prior to the running of the statute.). Therefore, when the FDIC was appointed receiver for Southeast Bank in September, 1991, only four and a half years of the five-year limitations period had elapsed. At that time, the statute of limitations was again tolled due to the compulsory nature of the administrative claims process. In any event, Nants' recovery is not predicated on breach of the underlying contract. It is based on account stated, as reflected in the final statement of January 4, 1990. Therefore, the Court finds no merit in the FDIC's defense of statute of limitations.

### CONCLUSION

Pursuant to *Fed.R.Civ.P.* 58, the Court shall enter its final judgment by separate order in accordance with the foregoing findings of fact and conclusions of law.

**DONE AND ORDERED.**

---

sary detail to form the basis of an account stated. The Court disagrees. First, the Court notes that the 1990 final statement indicates that it was supported by a computer print-out. Even though the copy of the statement presented to the Court did not have a computer print-out attached, the FDIC does not argue that the original lacked

one. Moreover, viewing the three statements in the context of the procedure agreed to by Nants and the bank in the March 17, 1987, letter, the Court finds that their respective contents sufficiently apprised the bank of the basis for the outstanding cumulative amounts shown on the statements.