707 So.2d 909 (1998)
SOUTH MOTOR COMPANY OF DADE COUNTY, a Florida corporation d/b/a South Motors Honda and South Motors BMW, South Motors Company of Dade County, Inc., a Florida corporation d/b/a South Motors Collision and Body Shop, South Motors Buick, Inc., a Florida corporation, South Motor Nissan Co., a Florida corporation, and LCA Acquisition Corp. d/b/a South Motors Infiniti, Appellants,
v.
ACCOUNTABLE CONSTRUCTION CO. d/b/a Fairway Industries, a Florida corporation, Appellee.
No. 97-1480.
District Court of Appeal of Florida, Third District.
March 11, 1998.
*910 Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel, P.A., and Elliot H. Scherker, and Ronald M. Rosengarten, and V. Dawn Beighey, Miami, for appellants.
Mark A. Greenberg, Weston, for appellee.
Before SCHWARTZ, C.J., and GREEN and SHEVIN, JJ.
GREEN, Judge.
South Motor Company of Dade County ("South Motors") appeals an adverse jury verdict in a construction contract dispute brought by its former contractor, Accountable Construction Co. d/b/a Fairway Industries ("Fairway"), as well as the denial of its motion for directed verdict on its counterclaim. South Motors claims that both its defense of the main action and its counterclaim were severely prejudiced by numerous erroneous evidentiary rulings, the most harmful of which was the denial of its pretrial motion in limine which sought to preclude Fairway from injecting South Motors' insurance coverage into the issues of this trial. We agree and reverse for a new trial, but affirm the denial of South Motors' motion for directed verdict.
South Motors is a conglomerate of various automobile dealerships and repair shops. When Hurricane Andrew struck on August 24, 1992, all of these dealerships and repair shops were severely damaged. At the time, South Motors was insured for its losses. In an effort to make their dealerships and repair shops operational as quickly as possible, South Motors entered into an oral contract with Fairway for the repair of the damage on the day after the hurricane on a "cost plus" basis. Basically, South Motors agreed to pay Fairway its actual cost for the repair of the damages plus ten percent overhead and ten percent profit. It was agreed that Fairway would furnish adequate documentation to South Motors in support of its charges. After Fairway performed under this contract for approximately eight weeks and collected $1.8 million dollars, South Motors terminated Fairway's services. Fairway filed suit for breach of contract, open account and quantum meruit, seeking approximately $300,000.00 still allegedly owed under the contract. *911 South Motors counterclaimed for breach of contract and the imposition of a fraudulent lien, alleging that Fairway had overbilled and failed to provide adequate documentation in support of its charges.
Prior to trial, South Motors moved in limine to preclude any mention of the existence of its insurance or the insurance proceeds received for its losses. South Motors argued that the existence of insurance was irrelevant to the claims being tried and allowing such evidence would be prejudicial. The trial court denied the motion, noting that the issue of insurance seemed to be "part of the factual matter of the case." South Motors renewed its objection to the denial of this motion in limine after the jury was sworn and was permitted to maintain a standing objection to the mention of insurance throughout the course of the trial.
As a result of the denial of South Motors' motion in limine, the trial record is replete with repeated and substantial references to South Motors' insurance coverage. Fairway seemingly seized upon every opportunity to inform the jury that South Motors had been generously compensated for its losses by its insurance carrier and therefore, was in a position to pay Fairway for the sums allegedly sued upon. Indeed, at one point, Fairway went so far as to insinuate that South Motors may have defrauded its insurer by retaining insurance money that it had been given for the repairs of its various businesses.[1]
At the close of the testimony of the trial, South Motors again renewed its objection to the repeated references to insurance matters and requested a curative instruction. Ironically, at that point, Fairway's counsel agreed that South Motors' receipt of insurance proceeds had nothing to do with Fairway's right to recover under its contract. The trial court then gave a curative instruction to the jury essentially instructing them to ignore all of the references to insurance because they were irrelevant to the issue of whether South Motors owed money to Fairway under the contract.[2] On this appeal, however, South Motors maintains that the evidence of insurance in this case was so pervasive and prejudicial that it tainted the jury and entire trial process to the point where it could not be cured by this belated instruction. We agree.
It has long been the law of this state that unless the existence or amount of insurance coverage has direct relevancy to a matter at issue, it is not a proper matter for the jury's consideration of the issues of liability and damages. See Beta Eta House Corp. of Tallahassee v. Gregory, 237 So.2d 163, 165 (Fla.1970); Carls Markets, Inc. v. Meyer, 69 So.2d 789, 793 (Fla.1953); Gold, Vann & White, P.A. v. DeBerry, 639 So.2d 47, 54 (Fla. 4th DCA 1994); Seminole Shell Co. v. Clearwater Flying Co., 156 So.2d 543, 544-45 (Fla. 2d DCA 1963). The danger with injecting evidence of insurance before the jury is that they "might be influenced thereby to fix liability where none exists, or to arrive at an excessive amount through sympathy for the injured party and the thought that the burden would not have to be met by the defendant." Carls Markets, 69 So.2d at 793.
Although our courts certainly do not condone any trial attorney's attempt to improperly inject the issue of insurance into a trial, the improper admission of such evidence does not per se warrant a mistrial or justify a reversal on appeal. See Luster v. Moore, 78 So.2d 87, 88 (Fla.1955). Thus, improper references to insurance when coupled with a timely curative instruction may render such error completely harmless. See Luster, 78 So.2d at 88; Carls Markets, 69 So.2d at 793; Sayad v. Alley, 508 So.2d 485, 486 (Fla. 3d DCA 1987).
*912 It is clear that the central issues of both the main action and counterclaim is whether either of the parties owed any money to the other under the terms of their oral "cost-plus" agreement. It is equally clear that the existence and amount of South Motors' insurance coverage was wholly irrelevant to a determination of this issue. The improper admission of the evidence and argument as to South Motors' insurance coverage completely overshadowed this issue and was an error. Due to its pervasive nature and belatedness of the curative instruction, this error can hardly be deemed harmless. Moreover, we agree with South Motors that it was doubly prejudiced by this error, both as a defendant and a counterplaintiff. That is, because the jury was made aware of the fact that South Motors had received insurance proceeds for its losses, the jury may have been predisposed to return a verdict in favor of Fairway under the belief that the carrier would pay the damages. Similarly, the jury may have been less likely to find in favor of South Motors on its counterclaim by virtue of its coverage, upon the jury's belief that to do so would provide South Motors with a windfall. We thus conclude that a new trial is warranted, both on the main action and the counterclaim.
We note that our disposition of this appeal has effectively mooted all but two of the remaining appellate issues raised, which we will now briefly address.
South Motors additionally argues that the lower court erred in giving an account stated instruction[3] to the jury when that theory was neither pled or tried by consent. Fairway's complaint alleged an action for account opened. Actions for an account stated and an open account are two distinct causes of actions requiring different burdens of proof. An account stated claim is "`an agreement between persons who have had previous transactions, fixing the amount due in respect to such transactions and promising payment.'" Nants v. F.D.I.C., 864 F.Supp. 1211, 1219 (S.D.Fla.1994) (citation omitted). Thus, for an account stated to exist, there must be an agreement that a certain balance is correct and due, and an express or implicit promise to pay that balance. See Georges v. Friedman & Co., P.A., 499 So.2d 59, 59 (Fla. 4th DCA 1986). An account opened is an unsettled debt arising from items of work and labor, with the expectation of further transactions subject to future settlements and adjustment. See Robert W. Gottfried, Inc. v. Cole, 454 So.2d 695, 696 (Fla. 4th DCA 1984). We agree that the jury instruction for account stated was erroneous, where this cause of action was not pled, and the record negates Fairway's argument that it was tried by consent. We find that this instruction was particularly prejudicial in this case because the lower court essentially told the jury that Fairway's invoices or bills were presumptively correct by acquiescence when the accuracy of Fairway's invoices and bills was very much a disputed issue of this trial.
Finally, South Motors asserts that the lower court's denial of its motion for directed verdict on its counterclaims for breach of contract and fraudulent claim of lien was error. Essentially, South Motors had argued that it was entitled to a directed verdict based upon unrefuted evidence of Fairway's inadequate documentation and/or overcharges in its invoices and fraudulent *913 lien. We find the denial of this motion to be proper.
A party moving for directed verdict admits not only the facts stated in the evidence, but every conclusion favorable to the adverse party, even if the evidence is conflicting or different conclusions can be drawn from it. See State Farm Mut. Auto. Ins. Co. v. Resnick, 636 So.2d 75, 76 (Fla. 3d DCA 1994) (quoting Nelson v. Ziegler, 89 So.2d 780, 782 (Fla.1956); Azar v. Richardson Greenshields Secs., Inc., 528 So.2d 1266, 1269 (Fla. 2d DCA 1988)). Thus, a verdict can only be granted when "`the facts, as presented to the jury, upon their most favorable interpretation to the party moved against are susceptible of only one reasonable conclusion.'". Yanks v. Barnett, 563 So.2d 776, 777 (Fla. 3d DCA 1990) (quoting Tanenbaum v. Biscayne Osteopathic Hosp., Inc., 173 So.2d 492, 494 (Fla. 3d DCA 1965)); see also Carrousel Int'l Corp. v. Auction Co. Of America, Inc., 674 So.2d 162 (Fla. 3d DCA 1996). There was substantial testimony from Fairway's principal that he provided documentation in support of his charges. The jury could have found this documentation to be adequate and amounts contained therein to be reasonable. As for the fraudulent lien claim, a lien is fraudulent when a "lienor has willfully exaggerated the amount... or in which the lienor has willfully included a claim for work not performed ...." § 713.31(2)(a), Fla. Stat. (1993); Viyella v. Gomes, 657 So.2d 83, 84 (Fla. 3d DCA 1995) (lienor willfully filed a claim for work he admittedly did not perform). While it is true that Fairway did not deduct certain undisputed credits from its lien, it can not be concluded as a matter of law that this was a wilful miscalculation. Since every favorable inference must be drawn in favor of the non-moving party, the directed verdict on the fraudulent claim was likewise proper. We therefore find the lower court's denial of South Motors' motion for directed verdict was proper.
Reversed.
NOTES
[1] Fairway told the jury: "We haven't been told yet whether South Motors is going to give the money back to [its] insurance company, but that is another question for another jury probably at another time."
[2] The court's curative instruction was as follows:

You have heard testimony in this case that South Motors received insurance proceeds in connection with a variety of various losses that it suffered as a result of Hurricane Andrew. You are instructed now that the fact that South Motors received insurance proceeds has no bearing on or relevance to the issues of whether South Motors owes Fairway Industries any moneys. Rather, your decision as to the claims of the parties and any damages to be awarded should be based entirely on the agreement between the parties.
[3] The instruction was as follows:

The plaintiff contends in this case that all or some of its charges are presumptively correct because defendant did not object to plaintiff's bills, invoices or statements within a reasonable time.
If you find from the evidence that bills, invoices or statements have been given by plaintiff to defendant, then defendant is bound to examine it and state his objection thereto within a reasonable time. Failing this, the bills, invoices or statements will be treated as presumptively correct by acquiescence. This presumption will depend largely for its force upon the circumstances of [the] case such as whether the person receiving the account is a man of business, the nature of his business, education, the local situation, customary dealings between the parties and any other pertinent circumstances.
The invoices, bills and statements may nevertheless be impeached or reopened by the defendant should the defendant prove either fraud or mutual mistake. You are charged that the party impeaching the account has the affirmative burden of proving either fraud or mutual mistake.