**In re Terrance McGEE and Iris L. McGee, Debtors.**

**Iris L. McGEE, Plaintiff,**

v.

**SOCIETY BANK & TRUST, Defendant.**

**Bankruptcy No. 94–3021.
Related Case No. 93–30262.**

United States Bankruptcy Court,
N.D. Ohio,
Western Division.

March 16, 1995.

Elliot H. Feit, Toledo, OH, for plaintiff.

Mark Tantari, Toledo, OH, for defendant.

## MEMORANDUM OPINION AND DECISION

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court after Trial upon Plaintiff's Complaint for Violation of Stay, and Defendant's Answer. At the Trial, the Parties were afforded the opportunity to present evidence and make arguments they wished the Court to consider. This Court has reviewed the arguments of counsel, exhibits, as well as the entire record in the case. Based upon that review, and for the following reasons, the Court finds that the Defendant has acted in violation of the automatic stay, and should pay Plaintiff the sum of Nine Hundred Thirty-eight Dollars ($938.00) in damages as a result of this violation.

### FACTS

On January 29, 1993, Plaintiff/Debtor Iris L. McGee (hereafter "Plaintiff") filed for Bankruptcy reorganization under Chapter 13 of the Bankruptcy Code. One of the debts to be paid through the Plan was a secured claim of Society Bank and Trust (hereafter "Society") in the amount of One Thousand Seven Hundred Forty-five and 23/100 Dollars ($1,745.23). The security for this loan was a Chevy Corsica. Another of Plaintiff's debts was a pre-paid tuition loan also with Society. Under this loan arrangement, Plaintiff's daughter's tuition to a private school was prepaid by Society, and Plaintiff was to make payments to Society in monthly installments. If payments were not timely made, Society is under an obligation to inform the school. It is the school's policy to then notify the parents that they are to keep their child at home until payments are brought current. The pre-paid tuition loan was not to be paid through the Chapter 13 Plan, but rather Plaintiff was to make payments directly to Society.

On December 10, 1993, Plaintiff made a Three Hundred Fifteen Dollar ($315.00) payment to Society at one of its branches. Though Plaintiff intended this payment to be on the pre-paid tuition loan, the payment was misapplied toward the car loan. On Friday January 4, 1994, after Plaintiff was made aware of the problem by collection calls from Society representatives, Plaintiff went back to Society and spoke with Vivian Applewhite, Society's branch Teller Supervisor. Ms. Applewhite informed the Plaintiff that she did not have the authority to change the allocation, but that she would discuss the matter with the manager, and call the installment loan department on Monday. In spite of this conversation, Society representatives continued their attempts at collection. One week later, Plaintiff again went to the Society branch, and this time spoke with the manager. Again she was reassured that steps were being taken to resolve the problem.

On Friday, January 21, 1994, Plaintiff's daughter was sent home from school with a notice that effective Monday, January 24, 1994, she will not be admitted into the classroom unless the tuition payments are brought current. On January 24, 1994, Plaintiff took time off of her work, using "personal time", and went to discuss the matter with the school. She spoke with the school's financial director, who agreed to allow her daughter back in school until the matter was resolved. Further, she contacted her attorney who initiated the present action.

Barbara Kronk, the Society's Pre–Paid Tuition Coordinator and the person responsible for sending the schools notices of delinquent payments, did not receive notice of the misallocation of the payment until January 27, 1994, when the school called her after conversations with Plaintiff. Ms. Kronk testified that in the absence of any knowledge of the misallocation, a notice was sent on December 24, 1993, from her office to the school informing them that Plaintiff had not made tuition payments as required under the loan

agreement. During the January 27th conversation with the school, Ms. Kronk realized that there was probably an error, and shortly thereafter the reallocation was made.

Plaintiff now seeks damages resulting from the time she took off work, attorney fees, and compensation for the time and harassment spent dealing with this problem. Plaintiff earns eleven dollars an hour, and was forced to take a whole day off work due to scheduling restrictions at her place of employment. Plaintiff's attorney has submitted a fee statement which totals One Thousand Forty-five Dollars ($1,045.00).

Society contends that the misallocation was Plaintiff's fault. Society claims that when Plaintiff talked to the teller on December 10, 1993, she asked that the payment be applied to her "installment loan." Society claims that such designation is improper, and that she should have properly termed the loan a "pre-paid tuition loan." Further, Society claims that Plaintiff used her maiden name which was used on the car loan but not the tuition loan, further leading to the confusion.

### LAW

The Bankruptcy Code provides in pertinent part:

**11 U.S.C. § 362. Automatic Stay**

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities investor Protection Act of 1970 (15 U.S.C. 78eee(a)(3)), operates as a stay, applicable to all entities, of—

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title.

(h) An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

### DISCUSSION

Determinations concerning violations of the automatic stay are core proceedings pursuant to 28 U.S.C. Section 157. Thus, this case is a core proceeding.

Section 362(h) of the Bankruptcy Code provides that when a creditor willfully violates the automatic stay, the injured party may recover actual damages, including costs and attorney fees. Actions taken in violation of the stay imposed under § 362 are invalid and voidable and shall be avoided absent limited equitable circumstances. *Easley v. Pettibone Michigan Corporation*, 990 F.2d 905 (6th Cir.1993). The protection of the stay is unavailable only when the debtor unreasonably withholds notice of the stay, prejudicing the debtor's ability to raise the stay as a defense; or when the debtor attempts to use the stay unfairly as a shield to avoid an unfavorable result. *Id.* at 911. A Bankruptcy Court's decision regarding the amount of damages is a factual finding and will not be disturbed unless the finding is clearly erroneous. *Archer v. Macomb County Bank*, 853 F.2d 497 (6th Cir.1988).

Society argues that it has not violated the stay because the mistaken allocation of the December 10, 1993, payment was the fault of the Plaintiff and not Society. This Court finds it unnecessary to determine fault on this issue. Even if improper allocation of the payment were the result of a mistake on Society's part, the Court does not feel that such inadvertence would rise to the level of a violation of the automatic stay so as to warrant costs and attorney fees in this case. Rather, this Court holds that Society violated the automatic stay by not correcting the problem in a reasonably prudent fashion. Society was put on notice of the problem on January 4, 1994, yet did not correct the problem until it was contacted by the school representatives on January 27, 1994. This is in spite of the repeated contacts made by Plaintiff to Society representatives. Indeed, if the school had not contacted the appropriate department of Society, the misallocation could still exist.

At the trial, Ms. Kronk testified that once she learned of the mistake, it took less than twenty-four hours to correct the problem. However, none of the representatives of Society were able to locate the appropriate de-

partment, or even to ascertain that the installment loan was being paid through a Chapter 13 bankruptcy reorganization plan. The Court finds such lack of inner-company organization and communication displayed here clearly exceeds the reasonable time necessary to correct the inadvertent mistake. See *In re Holman,* 92 B.R. 764, 769 (Bankr. S.D.Ohio 1988) (the time during which a secured creditor unlawfully retained collateral far exceeded that reasonably necessary to explore its legal rights and duties). Thus, this Court will award compensatory damages in this case.

■ Section 330(a)(1) of the Bankruptcy Code permits an attorney to recover reimbursement for actual, necessary expenses and reasonable compensation for actual, necessary services rendered based on the nature, the extent, and the value of such services and the time spent on such services. *In re Beair,* 168 B.R. 633, 637–38 (Bankr. N.D.Ohio 1994). Though Plaintiff's attorney has submitted a statement showing over one thousand dollars in fees and expenses, the Court finds that the sum of Five Hundred Dollars ($500.00) reasonable in this case.

■ The Court also finds that Plaintiff was forced to take off work one day, thereby using "personal time" for which she otherwise could have been reimbursed. Plaintiff earns eleven dollars an hour and missed eight hours of work, thereby resulting in a loss of Eighty-eight Dollars ($88.00). The Court also finds that Plaintiff should be awarded the sum of Three Hundred Fifty Dollars ($350.00) for the embarrassment and aggravation suffered as the result of Society's contemptuous acts.

In reaching the conclusion found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this opinion.

Accordingly, it is

***ORDERED*** that Defendant Society Bank & Trust remit the sum of Nine Hundred and Thirty-eight Dollars ($938.00) to Plaintiff/Debtor as compensatory damages for its violation of the automatic stay.