**LIBERTY MUTUAL INSURANCE COMPANY, Plaintiff,**

v.

**LEROY HOLDING CO., INC., Defendant.**

**In re FORT ANN EXPRESS, INC., Debtor.**

**LIBERTY MUTUAL INSURANCE COMPANY, Plaintiff,**

v.

**LEROY HOLDING CO., INC., Defendant.**

No. 96–CV–1442 (DRH).

Bankruptcy No. 96–13427 REL.

Adversary No. 96–91343.

United States District Court, N.D. New York.

July 31, 1998.

---

Wilson, Elser, Moskowitz, Edelman & Dicker L.L.P. (Marshall Todd Potashner, of counsel), New York City, for Plaintiff.

Hicks & Bailly (Stephen F. Bailly, of counsel), Albany, NY, for Defendants.

## MEMORANDUM–DECISION AND ORDER

HOMER, United States Magistrate Judge.

On May 17, 1996, a judgment was entered in this district in favor of plaintiff Liberty Mutual Insurance Company ("Liberty Mutual") against Fort Ann Express, Inc. ("Fort Ann") in the amount of $178,500. After Fort Ann filed a petition in bankruptcy, Liberty Mutual commenced the two above captioned consolidated actions to hold defendant Leroy Holding Company ("Leroy Holding") liable for the judgment of $178,500 and to subordinate the bankruptcy claim of Leroy Holding to that of Liberty Mutual. A bench trial was held on June 22 and 23, 1998.[1] At the conclusion of the trial, Liberty Mutual moved to amend its pleadings to conform to the evidence pursuant to Fed.R.Civ.P. 15(b). The amendment would add a claim that Leroy Holding should be ordered to pay $25,-132.73 to the Fort Ann bankruptcy estate. Docket No. 31.

In accordance with Fed.R.Civ.P. 52, what follows constitutes the Court's findings of

fact and conclusions of law. Based on those findings and conclusions, judgment is granted to Leroy Holding on both Liberty Mutual's claims for a judgment of $178,500 and for the equitable subordination of Leroy Holding's bankruptcy claim. Liberty Mutual's motion to amend its pleadings to conform to the evidence is granted and judgment on the additional claim is likewise.

## I. Findings of Fact

### A. Background

Fort Ann provides trucking services to customers. Prior to 1995, its business operations were conducted from premises in Queensbury, Warren County, New York owned by William and Elizabeth McQueen, the sole officers and shareholders of Fort Ann. Leroy Holding offered several services to customers from its principal location in Albany, New York, including tractor and trailers for lease and its own trucking services. Leroy Holding is wholly owned by its president, William Brown. SF 3–4.[2] From 1988 through the period at issue in this case, Fort Ann leased its tractors and trailers from Leroy Holding. SF 6; Ex. P–1.[3]

In 1992, Fort Ann experienced financial problems and was unable to meet certain obligations. To secure outstanding obligations, Leroy Holding obtained a mortgage from Fort Ann dated October 21, 1992 for $175,000. The mortgage was personally guaranteed by William McQueen and secured by property personally owned by the McQueens. Fort Ann's monthly payment on the mortgage was $3,590.39. SF 7, 9; Ex. P–2. Leroy Holding also paid a state tax debt of Fort Ann of $24,806.28 for which Fort Ann gave Leroy Holding a promissory note dated January 14, 1993 personally guaranteed by the McQueens. SF 10, 11.

Leroy Holding maintained insurance through Hanover Insurance Company on the

---

1. Liberty Mutual called as witnesses William Brown, Thomas Newport, Scott Barbour, William McQueen and Elizabeth McQueen. Leroy Holding called William Brown as its only witness. Numerous documents were also received in evidence and the parties submitted a lengthy statement of stipulated facts.

2. "SF" followed by a number refers to the paragraphs of the stipulated facts filed by the parties. Docket No. 26.

3. "Ex." followed by a letter and number refers to the exhibits introduced in evidence at the trial. "P" refers to those offered by Liberty Mutual and "D" to those offered by Leroy Holding.

tractors and trailers leased to Fort Ann. The cost of this insurance was paid by Fort Ann. However, the lease between Leroy Holding and Fort Ann also required Fort Ann to maintain insurance. Ex. P–1, p. 2. For reasons which are disputed by the parties, Fort Ann also obtained duplicate insurance from Liberty Mutual on the tractors and trailers. Liberty Mutual canceled its policy with Fort Ann effective September 12, 1994 and sought payment from Fort Ann of an alleged debt of over $231,000. SF 12, 92; Ex. P–3. A lawsuit concerning this debt was commenced against Fort Ann by Liberty Mutual in this district on March 16, 1995 in *Liberty Mut. Ins. Co. v. Fort Ann Express, Inc.*, No. 95–CV–355 (TJM/RWS) (*"Liberty Mutual I"*). SF 16, 17, 21–23.

By October 1994, Fort Ann's debt to Leroy Holding had risen to over $300,000. Trial Tr., vol. I (Docket No. 32), p. 86. On October 24, 1994, Fort Ann gave Leroy Holding a secured interest in Fort Ann's accounts receivables, fixtures and equipment. SF 14; Ex. P–5. The security agreement was duly filed. SF 15. The debt continued to rise, however. On July 1, 1995, Leroy Holding assumed management control of Fort Ann pursuant to an agreement executed that date by the two companies. SF 38; Ex. P–11. This agreement was never filed nor were Fort Ann's other creditors, including Liberty Mutual, given notice of the agreement. Brown and his designees thereafter caused Fort Ann to move its offices into a building in Glens Falls, Warren County, owned by one of Brown's companies and also used by Leroy Holding. Brown took control of Fort Ann's income, expense payments and bank accounts, and Fort Ann was permitted control only of the dispatching and operation of its tractors and trailers. SF 25–31, 44. Leroy Holding also directed Fort Ann's defense of *Liberty Mutual I*. SF 46–48, 51–55, 58–60, 88–89.

On April 8, 1996, Liberty Mutual was granted partial summary judgment on the issue of liability in *Liberty Mutual I*. SF 56. Liberty Mutual and Fort Ann then stipulated to settle *Liberty Mutual I* and pursuant to that stipulation, judgment was entered for Liberty Mutual against For Ann on May 17, 1996 for $178,500. SF 57, 61; Ex. P–25, –29. On May 30, 1996, Liberty Mutual served a restraining notice on Fort Ann and its bank to freeze Fort Ann's account in pursuit of collection of its judgment. SF 63, 65. Unaware of Leroy Holding's management control of Fort Ann, Liberty Mutual did not serve Leroy Holding. Upon assuming control of Fort Ann, however, Leroy Holding had commenced use of a new bank account for Fort Ann at a different bank of which Liberty Mutual was unaware and for which no restraining notice was served. SF 34, 64. On June 3, 1996, Leroy Holding withdrew the balance of $5,199.00 from that account and deposited this money in the account of Leroy Holding. SF 67. Thereafter, all income received by Fort Ann was deposited in the bank account of Leroy Holding and all payments made by Leroy Holding on behalf of Fort Ann were made from the Leroy Holding account. SF 69.

From July 1, 1995 when Leroy Holding assumed control of Fort Ann through May 30, 1996, Fort Ann received income of almost $1.9 million from which it made payments to Leroy Holding on its various obligations of approximately $800,000. SF 83, 84. From June 3 through 29, 1996, Leroy Holding deposited approximately $108,000 received by Fort Ann into Leroy Holding's bank account, but none of these funds were used to pay any of Fort Ann's obligations to Leroy Holding. No portion of the Liberty Mutual judgment against Fort Ann has been paid to date.

On June 29, 1996, Fort Ann filed for bankruptcy protection in this district under Chapter 11 of the Bankruptcy Act. SF 80. Leroy Holding was unaware of Fort Ann's intent to file before it received notice of the filing. The bankruptcy filing ended Leroy Holding's management control of Fort Ann, returned control to the McQueens, and automatically stayed any further collection efforts by creditors, including Leroy Holding and Liberty Mutual. Both Leroy Holding and Liberty Mutual have filed proofs of claim in the bankruptcy proceeding and Fort Ann's plan of reorganization has been confirmed. SF 87, 90; Ex.–44. Liberty Mutual then commenced this action against Leroy Holding and a related action in the bankruptcy pro-

ceeding. The two actions were consolidated for trial. SF, p. 3.

## II. Discussion

### A. Piercing the Corporate Veil

Liberty Mutual contends first that because Leroy Holding controlled Fort Ann, the corporate veil should be pierced and Leroy Holding should be held liable for payment of the Fort Ann judgment to Liberty Mutual for $178,500.

▮ The circumstances under which a corporate veil may be pierced are governed by state law. *Cruickshank & Co., Ltd. v. Dutchess Shipping Co., Ltd.,* 805 F.2d 465, 468 (2d Cir.1986). The matters at issue herein occurred solely within New York State. New York law requires a party to establish two elements before the corporate veil may be pierced. First, the defendant exercised complete domination over the corporation with respect to the transaction at issue. Second, such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil. *Am. Fuel Corp. v. Utah Energy Dev. Co.,* 122 F.3d 130, 134 (2d Cir.1997) (citing *Morris v. New York State Dep't of Taxation & Fin.,* 82 N.Y.2d 135, 603 N.Y.S.2d 807, 810–11, 623 N.E.2d 1157 (1993)).

### 1. Domination

▮ Domination is determined by an analysis of ten commonly used factors:

1) The absence of corporate formality in the dominated company;
2) Inadequate capitalization;
3) Whether funds are put in or taken out of the corporation for other than corporate purposes;
4) Overlap in ownership, officers, directors, and personnel;
5) Common office space, addresses and telephone numbers;
6) The amount of business discretion the dominated company possesses;
7) Whether the corporations deal at arms length;
8) Whether the corporations are treated as independent profit centers;
9) The payment or guarantee of the debts of the dominated corporation; and
10) Whether the dominated corporation's property was used by the other as if it were its own.

*Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.,* 933 F.2d 131, 139 (2d Cir.1991). Analysis of these factors is fact specific and will differ from case to case. *Weinreich v. Sandhaus,* 850 F.Supp. 1169, 1179 (S.D.N.Y.1994); *see also Morris,* 603 N.Y.S.2d at 810, 623 N.E.2d 1157 (New York law on piercing the corporate veil depends on the "attendant facts and equities"). No one factor is dispositive. *Freeman v. Complex Computing Co.,* 119 F.3d 1044, 1053 (2d Cir. 1997).[4]

▮ Here, Fort Ann did not hold directors' meetings, authorized none of the actions taken by its officers to cede management to Leroy Holding, and its corporate kit contained no entries after 1987. There was, then, an absence of any corporate formality at Fort Ann. Moreover, the course of events which compelled Fort Ann to agree to its management by Leroy Holding resulted from its undercapitalization, a circumstance which continued to its filing for bankruptcy on June 29, 1996. While there was no overlap in the ownership of Leroy Holding and Fort Ann, after the July 1, 1995 agreement, there did exist substantial overlap in the officers and personnel of the two companies. Finally, after the July 1, 1995 agreement, the two

---

4. Leroy Holding contends that the transaction at issue here is the debt which Fort Ann incurred to Liberty Mutual. Thus, Liberty Mutual must establish Leroy Holding's domination in the 1992–94 period when the debt arose. Def.'s Post–Trial Br. (Docket No. 34) at pp. 2–5. Liberty Mutual asserts, however, that the relevant period is that following accrual of the debt when, it alleges, Leroy Holding acted to keep Fort Ann from paying the judgment and to impede Liberty Mutual from collecting it. The claim asserted by Liberty Mutual, if proven, suffices for recovery. *See Austin Powder Co. v. McCullough,* 216 A.D.2d 825, 628 N.Y.S.2d 855, 857 (3d Dep't 1995)(claim established if domination prevented a corporation from satisfying a judgment). Accordingly, the time period in question for determining whether Leroy Holding dominated Fort Ann is the period following accrual of the Fort Ann debt to Liberty Mutual.

companies shared office space, addresses and other administrative facilities, the business discretion of Fort Ann was exercised on its behalf in virtually every significant matter by representatives of Leroy Holding, and the two companies ceased dealing at arms length. Thus, factors one, two, four, five, six and seven weigh in favor of a finding of domination.

Funds of Fort Ann were, of course, used to pay expenses to creditors, including Leroy Holding. All such payments carried a corporate purpose. There is no evidence in the record that any funds of Fort Ann were used for non-corporate purposes. Even after Leroy Holding assumed management of Fort Ann, the two companies were operated as independent profit centers. Finally, there is no evidence that Leroy Holding paid or guaranteed the debts of Fort Ann[5] or that Fort Ann's property was used by Leroy Holding as its own. Thus, factors three, eight, nine and ten weigh against a finding of domination.

A finding as to any one of these factors is not conclusive. Weighing these factors in light of the evidence presented here, the complete control of Fort Ann's financial transactions, including the defense of *Liberty Mutual I*, the relocation of Fort Ann's offices to those of Leroy Holding lead to a conclusion of domination. Accordingly, I conclude that Liberty Mutual has satisfied its burden of establishing that from the execution of the management agreement on July 1, 1995 until Fort Ann commenced bankruptcy proceedings on June 29, 1996, Leroy Holding exercised complete domination over Fort Ann with respect to the transactions at issue herein.[6]

## 2. Causation

Once domination has been established, Liberty Mutual must then demonstrate that such domination was used to commit a fraud or wrong which injured Liberty Mutual.

Under New York law, the corporate veil may be pierced "where excessive control alone causes the complained of loss." *Wm. Passalacqua Builders v. Resnick Developers S. Inc.*, 933 F.2d at 138. The loss may include one resulting from the failure of the dominating company to pay a lawful debt. *See Anderson St. Realty Corp. v. RHMB New Rochelle Leasing Corp.*, 243 A.D.2d 595, 663 N.Y.S.2d 279, 280 (2d Dep't 1997); *Austin Powder Co. v. McCullough*, 216 A.D.2d 825, 628 N.Y.S.2d 855, 857 (3d Dep't 1995).

Liberty Mutual contends that Leroy Holding committed wrongs against Liberty Mutual through its domination of Fort Ann when it (1) opted not to pay Liberty Mutual from Fort Ann's funds, (2) continued Fort Ann's undercapitalization and commingled the assets, funds and personnel of Fort Ann with those of Leroy Holding, (3) failed to comply with the legal requirements for an assignment for the benefit of creditors in the July 1, 1995 management agreement, and (4) transferred Fort Ann's funds and banking activities to a Leroy Holding account to frustrate the efforts of Liberty Mutual to collect its judgment. Pl.'s Post–Trial Br. at pp. 23–27. Leroy Holding concedes that at least in part its conduct "may not have been the most appropriate way for Leroy or Fort Ann to protect their rights ...." Def.'s Post–Trial Br. at p. 7.

■ The decision of Leroy Holding to withhold payment by Fort Ann of the judgment to Liberty Mutual may be deemed a wrong to Liberty Mutual where, as here, the record demonstrates that sufficient funds were available to Fort Ann during the period of its domination by Leroy Holding to pay that judgment. *See Anderson St. Realty Corp. v. RHMB New Rochelle Leasing Corp.*, 663 N.Y.S.2d at 280; *Austin Powder Co. v. McCullough*, 628 N.Y.S.2d at 857. The wrongful nature of this conduct is corroborated by Leroy Holding's failure to give no-

---

5. The state tax debt payed by Leroy Holding for Fort Ann in 1992 occurred prior to the period for which Liberty Mutual alleges domination by Leroy Holding.

6. Liberty Mutual contends that Leroy Holding's domination over Fort Ann commenced prior to July 1, 1995. Pl.'s Post–Trial Br. (Docket No. 35) at pp. 20–22. Prior to the management agreement, however, Leroy Holding failed to exercise the degree of control required for a finding of domination. Accordingly, the period of domination is limited to that commencing after the execution of the management agreement.

tice to other creditors of the July 1, 1995 management agreement as was required for a formal assignment for the benefit of creditors, the payments by Fort Ann to Leroy Holding, and the efforts made to frustrate the ability of Liberty Mutual to collect its judgment.

The question then becomes whether Leroy Holding's domination of Fort Ann and the wrongs to Liberty Mutual resulted in injury to Liberty Mutual. Liberty Mutual contends that Leroy Holding's domination resulted in Fort Ann not paying the judgment to Liberty Mutual during the period of the domination. Liberty Mutual further alleges in the alternative that Leroy Holding's domination following service of the restraining notice deprived Liberty mutual of the ability to seize (a) the $8,043.24 then held by Fort Ann and (b) the $103,711.14 which thereafter was received by Fort Ann and deposited in a Leroy Holding account. Pl.'s Post–Trial Br. at p. 26. Leroy Holding contends that Liberty Mutual suffered no injury because at all times Leroy Holding held a superior claim to all funds available to Fort Ann by virtue of the secured interest obtained by Leroy Holding from Fort Ann on October 24, 1994. SF14, 15; Ex. P–5. Thus, Leroy Holding contends that even absent its domination and conduct, the loss alleged by Liberty Mutual would inevitably have occurred because Leroy Holding maintained first claim to all Fort Ann proceeds during the period of the domination. Def.'s Post–Trial Br. at pp. 7–8.

Under New York law, a perfected security interest in property affords the secured creditor a superior claim to that property as against other creditors. See U.C.C. § 9–312(5) (McKinney 1990); MNC Commercial Corp. v. Joseph T. Ryerson & Son, Inc., 882 F.2d 615, 619 (2d Cir.1989)(creditor with perfected security interest in receivables entitled to priority over claim acquired subsequent to such perfection). A perfected security interest thus remains superior to a judgment obtained against the debtor, especially where that judgment arose subsequent to perfection of the security interest and

where that judgment had not been further enforced by an execution or levy upon the judgment debtor's property. See Aspen Indus., Inc. v. Marine Midland Bank, 52 N.Y.2d 575, 439 N.Y.S.2d 316, 319, 421 N.E.2d 808 (1981)("restraining notice confers no priority upon the judgment creditor in the form of a lien on the judgment debtor's property"); City of New York v. Birch, 124 Misc.2d 984, 478 N.Y.S.2d 231, 233 (N.Y.Sup. Ct.1984)(same); David D. Siegel, Practice Commentaries C5222:8, N.Y. C.P.L.R. § 5222 (McKinney 1997)(restraining notice gives no priority).

Here, there is no dispute that Leroy Holding perfected a security interest in the accounts receivables of Fort Ann prior to and continuing throughout the period of domination. Ex. P–5. Throughout the period of domination, Fort Ann remained indebted to Leroy Holding for amounts at all times exceeding the amount of Liberty Mutual's judgment.[7] The security interest at all times afforded Leroy Holding priority over Fort Ann's accounts receivables, and the proceeds thereof, as against Liberty Mutual. As Leroy Holding maintained this superior claim, Liberty Mutual's restraining notice, and any other efforts it undertook or would have undertaken would necessarily and inevitably have been defeated by Leroy Holding's superior claim. That claim remained unimpaired either by Leroy Holding's own subsequent actions or by the subsequent collection efforts of Liberty Mutual.

Leroy Holding's conduct, it could not have caused injury to Liberty Mutual because Fort Ann's failure to satisfy any or all of Liberty Mutual's judgment resulted solely from the superiority of Leroy Holding's security interest, not from any wrongful conduct.

The two cases relied upon by Liberty Mutual are distinguishable on this basis. In Anderson Street Realty Corp. v. RHMB New Rochelle Leasing Corp., 243 A.D.2d 595, 663 N.Y.S.2d 279, the court upheld a lower court judgment which pierced a corporate veil and directed judgment against the defendant for the unpaid rent of a company dominated by

7. When the security agreement was executed in October 1994, Fort Ann owed Leroy Holding approximately $300,000–400,000. Docket No. 32, p. 87. In Fort Ann's bankruptcy petition filed June 29, 1996, it lists an outstanding debt to Leroy Holding of $550,000. SF 81; Ex. P–37.

the defendant. In *Austin Powder Co. v. McCullough*, 216 A.D.2d 825, 628 N.Y.S.2d 855, the court pierced a corporate veil and ordered judgment against a shareholder and another of the shareholder's companies for causing the nonpayment of a corporation's debt through undercapitalization and personal use of corporate funds. In neither case, however, did (1) the debtor simultaneously owe a debt to the dominating company, or (2) the dominating company hold a priority secured interest in the proceeds which the plaintiff asserted should have been used to pay its debt.

Because Liberty Mutual has failed to meet its burden of establishing that Leroy Holding's domination of Fort Ann caused it any injury, Liberty Mutual's claim on this ground must be denied.

### B. Equitable Subordination

■ Liberty Mutual next contends that the bankruptcy claim of Leroy Holding should be equitably subordinated to that of Liberty Mutual. Equitable subordination is permitted under the Bankruptcy Code. 11 U .S.C. § 510(c). Under this section, one creditor's claim may be subordinated to another if a three-part test is satisfied. First, the claimant must have engaged in inequitable conduct. Second, the misconduct must have resulted in injury to other creditors or conferred an unfair advantage on the claimant. Finally, equitable subordination will be ordered only when to do so would not conflict with the Bankruptcy Code. *In re 9281 Shore Rd. Owners Corp.*, 187 B.R. 837, 852 (E.D.N.Y.1995); *see also Matter of U.S. Abatement Corp.*, 39 F.3d 556, 561 (5th Cir. 1994). As the proponent of equitable subordination, Liberty Mutual bears the burden on each element. *In re Colonial Poultry Farms*, 177 B.R. 291, 301 (Bankr.W.D.Mo. 1995).

### 1. Inequitable Conduct

■ A party may not allege simply that it is the victim of "inequitable conduct." Rather, a party must articulate that the complained of conduct falls within one of three recognized classes of cases where subordination is appropriate. These include (1) fraud, illegality, or breach of fiduciary duty; (2)

undercapitalization; or (3) control or use of the debtor as an alter ego for the benefit of the claimant. *In re Granite Partners*, 210 B.R. 508, 514–15 (Bankr.S.D.N.Y.1997). Other courts have recognized that reliance on the doctrine has been limited to certain types of cases, including those where a third-party controls the debtor to the disadvantage of creditors. *Matter of U.S. Abatement Corp.*, 39 F.3d at 561.

■ The standard by which this factor is considered depends upon whether or not the creditor whose claim is sought to be subordinated is an "insider" of the debtor. *In re 604 Columbus Ave. Realty Trust*, 968 F.2d 1332, 1360 (1st Cir.1992). The conduct of an insider is subject to more rigorous scrutiny. *Matter of Fabricators, Inc.*, 926 F.2d 1458, 1465 (5th Cir.1991). This closer scrutiny means that an insider's claim will be subordinated if it is proven that the insider either breached a fiduciary duty or engaged in conduct that is somehow unfair. *In re Interstate Cigar Co.*, 182 B.R. 675, 679 (Bankr.E.D.N.Y.1995). Inequitable conduct by an insider may also include an unjust enrichment caused by unconscionable, unjust, unfair, or foul conduct. *In re 80 Nassau Assocs.*, 169 B.R. 832, 837 (Bankr.S.D.N.Y. 1994).

■ Determining who should be considered an insider for purposes of this analysis presents a highly fact sensitive question. *In re Chas. P. Young Co.*, 145 B.R. 131, 136 (Bankr.S.D.N.Y.1992), *leave to appeal denied*, Nos. 89–B–11879 & 91–6021A, 1992 WL 308359 (S.D.N.Y. Oct. 13, 1992). When the debtor is a corporation, the Bankruptcy Code defines insider to include, *inter alia*, a person in control of the debtor. 11 U.S.C. § 101(31)(B); *Matter of Krehl*, 86 F.3d 737, 741 (7th Cir.1996); *Pan Am Corp. v. Delta Air Lines, Inc.*, 175 B.R. 438, 500 (S.D.N.Y. 1994).

■ Leroy Holding's domination of Fort Ann from July 1, 1995 to June 29, 1996 constituted Leroy Holding as an insider during that period. Leroy Holding directed and managed the financial affairs of Fort Ann, determined which creditors would be paid and in what amounts, determined the loca-

tion of its business operations, and established administrative procedures. As an insider, then, Leroy Holding is subject to heightened scrutiny to determine if its conduct was unjust.

■ Liberty Mutual contends that Leroy Holding's conduct was unjust in three ways. First, it contends that Leroy Holding failed to establish that any amount of its claim in bankruptcy arose from fair dealing between Leroy Holding and Fort Ann. Second, it contends that the security agreement given by Fort Ann to Leroy Holding on October 24, 1994 should be voided because Leroy Holding gave no consideration to Fort Ann for that agreement. Finally, Liberty Mutual contends that $25,132.73 received by Leroy Holding from Fort Ann after Fort Ann filed for bankruptcy should be returned to the bankruptcy estate. Pl.'s Post–Trial Br. at pp. 27–35.

As to the first contention, the record of the trial establishes the following. During the period of domination, Fort Ann continued to lease tractors and trailers from Leroy Holding pursuant to the lease agreement negotiated between the parties on April 29, 1988. Ex. P–1. No tractors or trailers were added to that agreement after execution of the security agreement on October 24, 1994 or during the period of domination. Ex. P–1, Sch. A. There is no dispute that this lease was negotiated at arms length between Fort Ann and Leroy Holding. It was this arms length bargain which dictated Fort Ann's obligations to Leroy Holding during the period of domination. The record does not indicate any alteration of those terms during the period of domination. Thus, the debt to Leroy Holding incurred by Fort Ann resulted directly from the 1988 lease agreement and Fort Ann's continued operations, not from any wrongful, fraudulent or unjust conduct by Leroy Holding. This contention must be rejected.

As to Liberty Mutual's second contention, the record establishes that on October 24, 1994, the date of the security agreement, Fort Ann's past due obligations to Leroy Holding under the lease were approximately $300,000–400,000. Docket No. 32, p. 87. Leroy Holding then faced the option of terminating the lease, Ex. P–1, or foreclosing on the mortgage given Leroy Holding by Fort Ann in 1992. SF 7, 9; Ex. P–2. Termination of the lease would have effectively closed Fort Ann's operations which required the availability of the tractors and trailers. Foreclosure on the mortgage would have placed the McQueens, who personally guaranteed the mortgage, at risk of serious personal financial loss. In these circumstances, then, delivery of the security agreement to Leroy Holding was in consideration for Leroy Holding foregoing termination of the lease and foreclosure of the mortgage. Fort Ann thus received consideration from Leroy Holding for the security agreement and this contention must also be rejected.

As to Liberty Mutual's final claim, an automatic stay against creditors of Fort Ann went into effect with the filing of its bankruptcy petition on June 29, 1996. *See* 11 U.S.C. § 362. Leroy Holding received notice of the Fort Ann petition the same day. Leroy Holding thereafter received from Fort Ann $25,132.73 for obligations incurred prior to the filing of the petition. SF 91. Leroy Holding does not challenge Liberty Mutual's claim that such payments violated the automatic stay. However, the payments were made by Fort Ann as the debtor in possession. There has been no showing that Leroy Holding took any wrongful action to induce or obtain the payments. Absent a showing of wrongful conduct, the mere receipt of payments in violation of the automatic stay will not suffice to establish this element of Liberty Mutual's claim.

Liberty Mutual has thus failed to sustain its burden of establishing inequitable conduct by Leroy Holding.

## 2. Harm or Unfair Advantage

■ The second element requires the advocate for equitable subordination to prove that the specific conduct complained of injured the debtor or other creditors or gave the party taking the action an unfair advantage. *In re 80 Nassau Assocs.,* 169 B.R. at 840. To warrant subordination, this unfair advantage must have harmed the debtor or other creditors. *In re 9281 Shore Rd. Own-*

*ers Corp.,* 187 B.R. at 854. There is no requirement that the purported misconduct be a major cause of the debtor's bankruptcy. *In re 604 Columbus Ave. Realty Trust,* 968 F.2d at 1363. If the misconduct harmed the entire creditor class, it is sufficient to show as harm that general creditors will be less likely to collect their debts as a result of the misconduct. *Id.; In re 80 Nassau Assocs.,* 169 B.R. at 840. When a specific creditor is the only party affected by the misconduct, the offending claimant should be subordinated only to that claim. *Id.*

 Even assuming that Leroy Holding's conduct was unjust as alleged by Liberty Mutual, Liberty Mutual suffered no harm thereby nor did Leroy Holding obtain unfair advantage. As discussed above, Leroy Holding's security interest insured it first claim on the proceeds from Fort Ann, including the accounts receivables. Fort Ann was not, therefore, denied payment of its judgment against Fort Ann from any source to which Liberty Mutual enjoyed a prior claim. *See* section II(A)(2) *supra.*

As to the post-petition payments to Leroy Holding of $25,132.73, there is no showing that this sum would otherwise have been paid to Liberty Mutual. Absent evidence that Liberty Mutual would have received this sum if it had not been paid to Leroy Holding, Liberty Mutual has failed to sustain its burden of showing harm or unfair advantage from these payments.

### 3. Inconsistency with Bankruptcy Code

Given the findings and conclusions described above, denial of Liberty Mutual's claim for equitable subordination is fully consistent with the Bankruptcy Code, particularly its policies of preventing prejudice to creditors and ensuring fair distribution. *See In re Cole,* 172 B.R. 287, 291 (Bankr.W.D.Mo. 1994); *Fabricators, Inc. v. Technical Fabricators, Inc.,* 109 B.R. 186, 195 (Bankr. S.D.Miss.1987), *aff'd,* 126 B.R. 239 (S.D.Miss. 1989), *aff'd,* 926 F.2d 1458 (5th Cir.1991).

### C. Liberty Mutual's Motion to Amend Pleadings to Conform to the Evidence

At the conclusion of the trial, Liberty Mutual made an oral motion to amend its pleadings pursuant to Fed.R.Civ.P. 15(b). Docket Entry 6/23/98. By that motion Liberty Mutual seeks an order permitting addition of a claim pursuant to 11 U.S.C. § 362(h) directing Leroy Holding to return to the Fort Ann bankruptcy estate the $25,132.73 paid to it by Fort Ann after the filing of the bankruptcy petition. Docket No. 31. Upon the granting of such an amendment, Liberty Mutual seeks entry of an order directing return of this sum plus interest from the date of payments and costs, disbursements and attorney's fees to Liberty Mutual. Leroy Holding opposes the motion. Def.'s Post–Trial Br. at p. 10.

 Fed.R.Civ.P. 15(b) provides in pertinent part:

When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party *at any time, even after judgment;* but failure so to amend does not affect the result of the trial of these issues ....

(Emphasis added). The amendment of pleadings to conform to the evidence may thus be allowed even after the entry of judgment. *See Jin Ku Kim v. Nash Finch Co.,* 123 F.3d 1046, 1062 (8th Cir.1997); *Mendoza v. City of Rome, N.Y.,* 872 F.Supp. 1110, 1125 (N.D.N.Y.1994)(Hurd, M.J.).

 The consent of the parties to try the unpleaded issues constitutes the central question under Rule 15(b). That consent may be express or implied. *See Kirkland v. District of Columbia,* 70 F.3d 629, 633 (D.C.Cir.1995); *Portis v. First Nat'l Bank of New Albany, Miss.,* 34 F.3d 325, 331 (5th Cir.1994). Prejudice to the opposing party from the proposed amendment is a factor to be considered upon such a motion, but the prejudice considered is that following from the admission of the evidence at trial, not its legal effect. *See Hardin v. Manitowoc–Forsythe Corp.,* 691 F.2d 449, 456–57 (10th Cir.1982)(prejudice to opposing party may be cured during trial by granting continuance);

*Nants v. F.D.I.C.,* 864 F.Supp. 1211, 1219 (S.D.Fla.1994)(no prejudice to opposing party from admission of evidence at trial). The determination of a motion to amend to conform to the evidence is committed to the discretion of the trial court. *See Vt. Plastics, Inc. v. Brine, Inc.,* 79 F.3d 272, 279 (2d Cir.1996).

■ Here, the evidence on which Liberty Mutual bases its motion was admitted at trial without opposition from Leroy Holding. That evidence was received through a stipulation of fact, *see* SF 91, and judicial notice, taken without objection by Leroy Holding, of the fact that the post-petition payments by Fort Ann to Leroy Holding were not authorized by the bankruptcy court. The factual issues giving rise to this motion were thus raised during the trial without objection by Leroy Holding and with its implied consent.

■ Leroy Holding does not challenge here that it consented to the trial of these issue. Leroy Holding's opposition to this motion rests on two other grounds. First, Leroy Holding contends that Liberty Mutual's motion is untimely. However, as noted, such a motion may be filed even after judgment is entered and the issue of timeliness concerns the presentation of evidence, not the filing of the motion. Here, Leroy Holding either affirmatively stipulated or failed to object to the evidence giving rise to this motion. Therefore, even though Liberty Mutual admittedly had actual notice of the relevant facts at least eight months prior to trial, *see* Pl.'s Mem. of Law (Docket No. 31) at p. 4, n. 3, its motion at the conclusion of the trial remains timely under Rule 15(b).

■ Leroy Holding also contests the motion on the ground that it will be prejudiced if it is granted. Leroy Holding states that if it had known that these funds could be ordered returned to the Fort Ann bankruptcy estate, it would have negotiated a different settlement of its bankruptcy claim, *see* Ex. D–5, or sought an order from the bankruptcy court approving the payments. Both contentions of prejudice, however, relate not to the evidence admitted at trial but to its possible legal effect. Moreover, return of the payments to the bankruptcy estate does not preclude Leroy Holding from seeking distribution to itself of all or any portion of those proceeds. Return would simply insure that these funds were distributed under the supervision of the bankruptcy court and in accordance with the Fort Ann plan.

Finally, Leroy Holding contends that since a final decree has recently been entered in the Fort Ann bankruptcy, there now exists no method of returning the payments to the bankruptcy estate. The confirmed Fort Ann bankruptcy plan, however, includes specific provision for the outcome of this litigation. *See* Ex. P–44, p. 9. The plan itself provides a mechanism for receipt and distribution of the sum in question. Leroy Holding's opposition on this ground is, therefore, without foundation.

Accordingly, Liberty Mutual's motion to amend the pleadings to conform to the evidence will be granted and, based on the uncontested evidence offered at the trial, Leroy Holding will be directed to return the total of $25,132.73 to the escrow fund specified in paragraph 8 of the Fort Ann plan. Ex. P–44, p. 9. Distribution of those funds shall be made in accordance with the plan or as otherwise directed by the bankruptcy court.

■ Liberty Mutual also seeks payment of interest on this sum by Leroy Holding. The payment of interest may be ordered to compensate for the use or loss of use of funds for a period of time. *See Katsaros v. Cody,* 744 F.2d 270, 281 (2d Cir.), *cert. denied,* 469 U.S. 1072, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984). Here, Leroy Holding has enjoyed the use of the funds from the payments and the bankruptcy estate has been denied their use. The payment of interest on those funds from the dates of payment, *see* SF 91, will adequately compensate for any loss. The rate of interest shall be that received by the escrow fund described in paragraph 8 of the Fort Ann bankruptcy plan. Ex. P–44, p. 9.

■ Finally, Liberty Mutual seeks an order directing Leroy Holding to pay the costs, disbursements and attorney's fees it incurred in prosecuting this claim. Such an award is authorized by 11 U.S.C. § 362(h)

for willful violations of the automatic stay provision. *See In re Crysen/Montenay Energy Co.,* 902 F.2d 1098, 1105 (2d Cir.1990). Where a violation of the automatic stay is technical or inadvertent, however, such an order is inappropriate. *See In re McGee,* 181 B.R. 307, 310–11 (Bankr.N.D.Ohio 1995); *In re Jones,* 106 B.R. 33, 35 (Bankr. W.D.N.Y.1989). Here, Leroy Holding held a secured interest, the payments were received by Leroy Holding from the debtor in possession, the payments were disclosed in required filings, and it remains possible that the payments will be ordered returned to Leroy Holding by the bankruptcy court, either in whole or in part. On this record there is insufficient evidence to support Liberty Mutual's claim of a willful violation of the automatic stay by Leroy Holding. Liberty Mutual's request for costs, disbursements and attorney's fees is denied.

### III. Conclusion

For the reasons set forth above, it is hereby

**ORDERED** that:

1. The claim of plaintiff Liberty Mutual for judgment against defendant Leroy Holding for $178,500 by piercing the corporate veil is denied and dismissed;

2. The claim of plaintiff Liberty Mutual for an order equitably subordinating the bankruptcy claim of defendant Leroy Holding is denied and dismissed;

3. The motion of plaintiff Liberty Mutual to amend the pleadings to conform to the evidence is granted, and an order shall enter directing Leroy Holding to pay $25,132.73, plus interest, to the bankruptcy estate of Fort Ann, but the further request of plaintiff Liberty Mutual for an order directing that Leroy Holding pay the disbursements, costs and attorney's fees incurred by Liberty Mutual in prosecuting this claim is denied; and

4. The Clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**